■ JACK LALANNE BILTMORE HEALTH SPA, INC., Appellant-Respondent, v BUILTLAND PARTNERS et al., Respondents-Appellants. — Order, Supreme Court, New York County (Ira Gammerman, J.), entered February 16, 1983, which, *inter alia,* (1) denied plaintiff's motion for partial summary judgment; (2) granted defendants' cross motion for partial summary judgment to dismiss so much of plaintiff's complaint as seeks a declaratory judgment; and, (3) decreed that the defendants' notice of termination of the lease is valid and enforceable, affirmed, without costs. Pursuant to a 21-year lease executed in 1972, plaintiff tenant operated a health spa and a swimming pool in the cellar and subcellar of the Biltmore Hotel (Biltmore), located at 43rd Street and Madison Avenue, Manhattan. In 1978 Builtland Partners (Builtland) purchased the Biltmore and became plaintiff's landlord. Article 61 of plaintiff's lease reads in pertinent part: "If Landlord shall enter into a bona fide arrangement to demolish * * * the building of which the demised premises are a part, Landlord shall have the right to terminate this lease by giving Tenant 18 months' prior written notice, and, in such event, the term hereof shall terminate on the date contained in such notice as if such date were the original expiration date". By registered letter, dated October 23, 1981, landlord Builtland notified plaintiff that it was exercising its option to terminate this lease, in accordance with the terms of article 61, quoted *supra.* Builtland had decided to demolish the Biltmore and replace it with a commercial office building. The other defendant Lehrer/McGovern, Inc. is the construction manager for the project. After receipt and rejection of Builtland's notice, plaintiff commenced action against defendants for, *inter alia,* a declaratory judgment that their lease is still in effect because the alteration of the Biltmore does not constitute a demolition within the meaning of the subject article. Subsequent to the joinder of issue, plaintiff moved and defendants cross-moved for partial summary judgment concerning the declaratory judgment portion of the complaint. Our examination of this record reveals that the Biltmore Hotel no longer exists. In fact, all that remains of the "old Biltmore" is most of the steel skeleton and two structural slabs above Grand Central Station; while everything else such as the exterior masonry, internal walls, floors, ceilings, elevators, fixtures, electrical and plumbing conduits has been removed. Incidentally, in view of the fact that Grand Central Terminal has been designated a landmark under New York City's Landmarks Preservation Law (Administrative Code of City of New York, ch 8-A; see *Penn Cent. Transp. Co. v New York City,* 438 US 104, 136-138), certain parts of the Biltmore that pertained to that landmark were required to be preserved. As we unanimously said in *Friedman v Ontario Holding Corp.* (279 App Div 23, 25, affd 304 NY 625): "Practically speaking this building was demolished * * * The mere circumstance that part of the former structure could be salvaged or was useable * * *

does not change the result." We disagree with the dissent's contention that *Friedman v Ontario (supra)* is distinguishable in that it interpreted a statute. Clearly this court, in *Friedman,* established the principle that a commonsense meaning of "demolish" is not confined to razing the building. For all practical purposes the Biltmore was demolished, as that term is defined in article 61 of the lease between the parties. We agree with Special Term that plaintiff's motion should be denied and defendants' cross motion should be granted. Concur — Ross, Carro, Asch and Bloom, JJ.

Murphy, P. J., dissents in a memorandum as follows: On June 5, 1972, plaintiff Jack LaLanne Biltmore Health Spa, Inc. (LaLanne) executed a lease with Realty Hotel, Inc., the then owner of the Biltmore Hotel. This lease covered portions of the cellar and subcellar. The term of the lease was 21 years; it was to expire on June 30, 1993. Article 61 of the lease provides as follows: "61. If Landlord shall enter into a bona fide arrangement to demolish ~~the portion of~~ [*sic*] the building of which the demised premises are a part, Landlord shall have the right to terminate this lease by giving Tenant 18 months' prior written notice, and, in such event, the term hereof shall terminate on the date contained in such notice as if such date were the original expiration date, and Tenant shall surrender the demised premises to Landlord on or before such date." Defendant Builtland Partners (Builtland) acquired the Biltmore Hotel on or about July 28, 1978. Builtland, on or about October 23, 1981, sent written notice terminating the lease pursuant to article 61 on April 30, 1983. LaLanne immediately rejected this termination notice on the ground that the modification of the building did not constitute a demolition of it under article 61. Thereafter, Builtland undertook the renovation of the building. The construction was aimed at changing the Biltmore from a hotel to a commercial office building. LaLanne remained in operation until April 27, 1982, when it was required to vacate the premises upon order of the Department of Buildings. The order was issued because there was imminent danger to the safety and life of the occupants due to the alteration operations. This action was commenced on May 13, 1982. LaLanne sought declaratory and compensatory relief as a result of its forcible eviction by Builtland and defendant Lehrer/McGovern, the construction manager. In an order dated June 2, 1982, Justice Kleiman denied LaLanne's motion for a preliminary injunction. This court also denied a motion for a preliminary injunction on July 1, 1982. By notice dated July 28, 1982, Builtland informed LaLanne that it was in default under article 6 of the lease. It was Builtland's contention that LaLanne had failed to obtain a special permit required under the New York City Zoning Resolution for the operation of its health spa. Builtland stated that if the default was not cured, it would cancel the lease under article 17. When LaLanne did not cure, Builtland served a notice to terminate that was dated September 14, 1982 and effective September 17, 1982. Both sides moved for summary judgment at Special Term. LaLanne maintained that the lease did not terminate on April 30, 1983 because the building had not been "demolished." It further contended that it had been forcibly evicted on April 27, 1982. Builtland, on the other hand, asserted that the building was, in fact, being "demolished". It averred that, in any event, the lease had terminated on September 17, 1982 upon LaLanne's failure to cure the default. Finally, Builtland argued that it was justified in evicting LaLanne since it failed to pay certain additional rent due under article 50. Special Term's decision did not address all the issues raised in the papers. It found that the building had been demolished for purposes of article 61. The court relied upon *Friedman v Ontario Holding Corp.* (279 App Div 23, affd 304 NY 625). The order entered upon the decision (i) denied plaintiff's motion, (ii) granted defendants' cross motion to the extent of dismissing so much of the complaint as sought declaratory judgment, (iii) decreed that the

lease terminated on April 1, 1983, (iv) severed the remainder of the complaint, (v) denied the branch of defendants' cross motion to disqualify plaintiff's attorney and (vi) denied the remainder of the cross motion. While *Friedman* (*supra*) does present some authority supporting Builtland's position, that decision does not, in and of itself, decide the present appeal. In *Friedman,* a two-story commercial building was transformed into a 20-story commercial building. It was held that the building was, practically speaking, demolished within the meaning of the Business Rent Law. The holding in *Friedman* was, to a large extent, precipitated by the fact that additional rental space was needed in New York City at the time. The *Friedman* decision, by giving an expansive meaning to the word "demolish", gave effect to the legislative intent of the statute and it encouraged building in New York City. The present proceeding presents a completely different setting. This court is asked to make a declaration as to the rights of the parties under a commercial lease; no statute is involved. LaLanne asks that the word "demolish" be given a literal interpretation that the building must be totally razed. Builtland asks that a more liberal connotation be given to the same word. Parol evidence should be taken to clarify the meaning of the word "demolish" in this context. (*67 Wall St. Co. v Franklin Nat. Bank,* 37 NY2d 245.) Defendants' counsel even recognized this ambiguity in his own affidavit: "[f]urther, there exist issues of fact as to the meaning of the term 'demolish' in the real estate and construction industries at the time of the execution of the Lease and as to the significance, if any, of the fact that Builtland's application for approval of its plans with respect to the Biltmore was on a form entitled 'Altered Building Application.' " Even if Builtland's interpretation of the word "demolish" is accepted, a factual issue is presented as to whether the building was so substantially altered that this court must consider the building to be demolished. LaLanne's evidence indicates that the foundation, the structural steel, perimeter walls and other portions of the building will be retained. A trial should be held to ascertain the exact extent of the construction work. Builtland also contended that the lease terminated on September 17, 1982 because LaLanne failed to obtain a special zoning permit. Builtland could not effectively terminate the lease if it had previously evicted LaLanne from the premises. Builtland's right to enforce the lease may have terminated upon its prior forcible eviction of its tenant (cf. *Fifth Ave. Bldg. Co. v Kernochan,* 221 NY 370). Builtland does not contest the fact that its construction work precipitated the issuance of the Building Department's violation on April 27, 1982. Although there is proof tending to indicate a forcible eviction by Builtland, the latter has mentioned in both the record and its brief that LaLanne has failed to pay additional rent due under article 50 of the lease. Builtland, however, never really develops the legal or factual implications of this point. Article 22 of the lease reads as follows: "22. Landlord covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned." Builtland contends that LaLanne was properly evicted because of its failure to pay the additional rent (*Herstein Co. v Columbia Pictures Corp.,* 4 NY2d 117). These parties have had an ongoing dispute over additional rent allegedly due under article 50 of the lease. In a prior appeal (No. 16150) between these parties, the following details were presented. Builtland's nonpayment proceeding was dismissed in the Civil Court. This dismissal was affirmed by the Appellate Term. Builtland then brought a proceeding in the Supreme Court under CPLR 7601 to enforce

article 50. As a result of both interlocutory and final judgments at the Supreme Court level, Builtland received $196,197.86. However, this court recently modified the interlocutory judgment, vacated the final judgment and remanded the matter for further proceedings (*Matter of Builtland Partners v LaLanne Biltmore Health Spa*, 93 AD2d 727). Thus, at present, there is no final determination with regard to the issue of the additional rent. Furthermore, Builtland had accepted the base rent from LaLanne through July of 1982. Hence, a question may be presented as to whether Builtland waived its right to forcibly evict LaLanne by accepting payment of the base rent. Until all the facts are developed with regard to this and all other issues, summary judgment should not be granted to either side. In passing, it should be noted that defendants requested that LaLanne's attorney, Israel G. Seeger, be disqualified since he might testify at trial as to the circumstances surrounding the formulation of the lease. The evidence indicates that Seeger and LaLanne's principal were involved in the negotiation of the lease. If Seeger intends to testify at trial, he should permit a substitute attorney to prosecute the action. Accordingly, the order of the Supreme Court, New York County (Gammerman, J.), entered February 16, 1983, should be modified, on the law and on the facts, by (i) denying the branch of defendant's motion to declare the lease terminated, (ii) vacating the severance, and (iii) granting that branch of defendants' motion to disqualify plaintiff's attorney at trial should he testify at trial. As modified, the order should otherwise be affirmed.