PRENTICE H. MARSHALL, District Judge.
The question presented in this appeal is whether a debtor who has filed a petition in bankruptcy under chapter 13 of the Bankruptcy Code is entitled under the Code to “cure” a default on a residential mortgage loan though he filed- the bankruptcy petition only after a state court had entered a judgment of foreclosure. The district court, 32 B.R. 711, on appeal from a final order confirming the debtors’ plan, held that he cannot. 'We reverse.
On September 4, 1974, appellants Hugh and Joanne Clark obtained a loan from appellee Federal Land Bank of St. Paul (“Bank”) secured by a first mortgage of appellants’ farm in Jackson County, Wisconsin. The farm included a residence that appellants used until the winter of 1981-82 when their gas service was cut off due to nonpayment of their bill, leading to frozen pipes and resultant water damage to the home.
On September 3, 1981, the Bank commenced a foreclosure action against the Clarks in the Circuit Court of Jackson County, Wisconsin. The Clarks did not respond to the lawsuit. On February 2,1982, the circuit court found pursuant to Wis. Stat.Ann. § 846.102 (West 1977 & Supp. 1983)[1] that appellants had abandoned the premises and that they had made no homestead claim under id. § 846.11,[2] and it entered a judgment of foreclosure. Under § 846.102, foreclosure sale was authorized any time after April 2, 1982.
On May 27,1982, before sale of the property and before notice of sale was given, the Clarks filed a petition in bankruptcy under chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301-30 (1982). The plan confirmed by the bankruptcy court pursuant to id. § 1325 on October 15, 1982 provides for payments over a period of thirty-six months to cure prior defaults in payment *871 on the mortgage loan while maintaining current payments. The bankruptcy court found that the bank was adequately protected. Id. § 1325(a)(5)(B)(ii). It determined that the value of the property was over $130,000 and found that the bank’s security interest for its claim of approximately $24,000 was junior only to unpaid taxes and a mechanic’s lien of approximately $5,000.
The Bank appealed to the district court, arguing that mortgagors of a farm including a residence are not entitled under chapter 13 to cure their defaults and restore their mortgage payments once a judgment of foreclosure is entered against them. The district court accepted the Bank’s position and on June 16, 1983 entered an order reversing the bankruptcy court’s approval of the plan and remanding the case to the bankruptcy court. This appeal followed.
Despite the judgment of foreclosure, the Clarks still had an interest in the property at the time they filed their petition in bankruptcy, such that the property was part of the estate under 11 U.S.C. §§ 541 and 1307. Under Wisconsin law, a mortgagee has only a lien on the mortgaged property even after a judgment of foreclosure is entered. Neither equitable nor legal title passes until the foreclosure sale is held. A judgment of foreclosure “does little more than determine that the mortgagor is in default, the amount of principal and interest unpaid, the amounts due to plaintiff mortgagee for taxes, etc____ The judgment does not destroy the lien of the mortgage but rather judicially determines the amount thereof.” Marshall & Ilsley Bank v. Greene, 227 Wis. 155, 164, 278 N.W. 425, 429 (1938).[3] See also Bank of Commerce v. Waukesha County, 89 Wis.2d 715, 723, 279 N.W.2d 237, 241 (1979) (Wisconsin follows “lien” theory of mortgages); In re Lynch, 12 B.R. 533, 534-35 (Bankr.W.D.Wis.1981) (mortgagor loses interest in property only after foreclosure sale).
The curing of defaults in chapter 13 cases is governed by § 1322, the pertinent parts of which provide that
(b) the plan may—
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor’s principal residence, or of holders of unsecured claims;
(3) provide for. the curing or waiving of any default;
(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
11 U.S.C. § 1322(b) (1982).
Under § 1322(b)(2), if what the bankruptcy court did was a modification of the Bank’s rights, it was not permitted, as the Bank’s claim was secured only by its security interest in the Clarks’ property, which includes their principal residence.[4] The Clarks argue that the bankruptcy court merely permitted them to cure the default, which they argue was permitted under (b)(5). The Bank responds that (b)(5) was unavailable here, for reasons we will discuss in a moment. We will address these issues in turn.
The terms “modify” and “cure” are nowhere defined in the Bankruptcy Code. *872 However, it is clear that Congress intended “cure” to mean something different from “modify”; otherwise, in light of (b)(2), (b)(3) would be superfluous. It is well established that a court should avoid a construction of a statute that renders a portion of the statute superfluous. See Bird v. United States, 187 U.S. 118, 124, 23 S.Ct. 42, 44, 47 L.Ed. 100 (1902); Payne v. Panama Canal Co., 607 F.2d 155, 164 (5th Cir.1979); United States v. Blasius, 397 F.2d 203, 207 n. 9 (2d Cir.1968), cert. dismissed, 393 U.S. 1008, 89 S.Ct. 615, 21 L.Ed.2d 557 (1969).
Absent a persuasive reason to the contrary, we are to attribute to the words of a statute their common meaning. See, e.g., NLRB v. Amax Coal Co., 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981); Watt v. Alaska, 451 U.S. 259, 266, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). The common meaning of “cure” is to remedy, restore, remove, or rectify, see Webster’s Third International Dictionary 555 (1971), and as the term relates to defaults, “cure” means to restore matters to the status quo ante. See, e.g., Jack LaLanne Biltmore Health Spa, Inc. v. Builtland Partners, 99 A.D.2d 705, 471 N.Y.S.2d 854, 856 (1984) (default on lease); Carolina Commercial Bank v. Allendale Furniture Co., 280 S.C. 247, 312 S.E.2d 569, 571-72 (1984) (default on mortgage loan); Chesterton State Bank v. Coffey, 454 N.E.2d 1233, 1237 (Ind.App.1983) (using cure in the sense of “remedy”); Federal National Mortgage Association v. Bryant, 62 Ill.App.3d 25, 28, 18 Ill.Dec. 869, 378 N.E.2d 333, 336 (1978) (mortgage). Ordinarily, the means by which one cures a default is by paying all amounts due and owing; however, “cure” is the end, not the means, and what the term refers to is the restoration of the way things were before the default. Thus, the plain meaning of “cure,” as used in § 1322(b)(2) and (5), is to remedy or rectify the default and restore matters to the status quo ante.
Acceleration of a debt is a standard consequence of a default in payments. Most notes are like the one the Clarks executed here and provide that the lender can accelerate the payments upon default. Since to cure means to restore matters to the way they were before the default, we think that the power to cure in § 1322(b) necessarily includes the power to de-accelerate the payments on the note. De-acceleration, therefore, is not a form of modification banned by (b)(2) but rather is a permissible and necessary concomitant of the power to cure defaults. Accord, Grubbs v. Houston First American Savings Association, 730 F.2d 236 (5th Cir.1984) (en banc); Taddeo v. DiPierro (In re Taddeo), 685 F.2d 24 (2d Cir.1982).[5]
This construction is supported by the legislative history of § 1322(b). The court in Grubbs examined that history extensively, and we will not repeat the details here. Section 1322(b) was, with the exception of two amendments, the version found in the House of Representatives’ proposed bankruptcy bill, H.R. 8200. As originally introduced, H.R. 8200 provided in § 1322(b) that the debtor’s plan could
(2) modify the rights of holders of secured claims or of holders of unsecured claims;
(3) provide for the curing or waiving of any default;
(5) provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
Subsections (b)(2) and (3) related to debts subject to adjustment under a chapter 13 plan — for the most part, any pre-petition *873 obligation not extending beyond the term of the plan. Subsection (b)(5) related to long-term obligations not subject to discharge since the term of their payment extended beyond the expiration of the plan. See also 11 U.S.C. § 1328(a) (1982). Grubbs, 730 F.2d at 243. As originally proposed, therefore, § 1322(b) would have permitted the modification of any secured indebtedness and the curing of any default.
H.R. 8200 was patterned after the proposed legislation of the Bankruptcy Commission. The Commission’s proposal, § 6-201(2), (4), provided that the plan could
(2) ... include provisions dealing with claims secured by personal property severally, on any terms, and ... provide for the curing of defaults within a reasonable time and otherwise alter or modify the rights of the holders of such claims;
(4) ... include provisions for the curing of defaults within a reasonable time and the maintenance of payments while the case is pending on claims secured by a' lien on the debtor’s residence and on unsecured claims or claims secured by personal property on which the last payment is due after the completion by the debtor of all payments under the plan.
Bankruptcy Laws Commission’s Report, H.R.Doc. 137, pt. 2, 93d Cong., 1st Sess. 204 (1973); Grubbs, 730 F.2d at 243-44. Though the Commission’s proposal differed from H.R. 8200 in that it treated cláims secured by real property differently from those secured by personal property, it provides some insight into what was meant by the term “modify.” With respect to § 6-201(2), the Commission’s explanatory note stated that the power to modify included authorization to alter “the size and timing of installment payments as well as the alteration or modification of other provisions of the secured creditors’ contract.” Id. at 205. With respect to § 6-201(4), the Commission stated that its intent was to confer limited authority to deal with claims secured by mortgages on the debtor’s residence and long-term claims that could not be fully paid under the plan. Id. The report emphasized that
this clause does not authorize reduction of the size or varying of the time of installment payments nor, except in instances where the last payment on a claim secured by a lien on the debtor’s residence is due during the term of the plan, is it contemplated that the claim would be fully paid off under the plan. Any unpaid balance would not be covered by a discharge granted by § 6-207. But while the debtor is operating under the plan, he may be able to employ the authorization given under this clause to preserve his equity in his home and to keep current on long-term debt by provisions in the plan for curing defaults and maintaining payments.
Id. at 205-06.
Section 1322(b) of H.R. 8200 was amended in the Senate. In the only Senate committee hearing held before the final version of S. 2266 (the Senate’s bill) was introduced, secured creditors’ advocates voiced no objection to the cure of default accelerations. Their opposition was directed to provisions permitting modification of a secured claim by reducing the amounts of installment payments and reduction of the secured amount of the claim to the value of the collateral. Hearings Before the Subcommittee on Improvements of the Judicial Machinery of the Senate Committee on Judiciary, 94th Cong., 1st Sess. (1975), at 124-38 (statement on behalf of American Bankers Association), 139-84 (statement on behalf of National Consumer Finance Association). Grubbs, 730 F.2d at 245. At the hearings held during the 95th Congress after S. 2266 was introduced, secured creditor advocates. voiced only similar objections. Hearings Before the Subcommittee on Improvements of the Judicial Machinery of the Senate Committee on Judiciary, 95th Cong., 1st Sess. (1977) at 652-53 (statement on behalf of National Consumer Finance Association); 703, 707, 714-15 (discouragement of savings and loan associations making home loans); 719-21 (statement on behalf of National Association of Real Estate Investment Trusts). Grubbs, 730 F.2d at *874 245 n. 13. This, along with the commentary to the Bankruptcy Commission’s bill, supports the view that de-acceleration accompanying cure of a default was not what Congress had in mind when it referred to “modification” of claims.
The Senate bill made only one amendment in § 1322(b) of H.R. 8200, changing (b)(2) to exempt from “modification” claims secured entirely by real property mortgages. The final amendments to H.R. 8200 and S. 2266 occurred via floor amendments in both houses, which reconciled the two versions of the legislation. The Senate accepted a limitation of its exemption to (b)(2) so that only residential mortgage loans were exempt from “modification.” In addition, (b)(5) was amended to provide that its provisions applied notwithstanding (b)(2) as thus amended. The floor statements explaining'these amendments stated that “[i]t is intended that a claim secured by a debt- or’s principal residence may be treated with [sic] under section 1322(b)(5) ----” 124 Cong.Rec. H11106 (Sept. 28, 1978), S17423 (Oct. 6, 1978). We agree with the courts in Grubbs and Taddeo that the purpose of the “notwithstanding” clause in (b)(5) was to emphasize that defaults in residential mortgages could be cured notwithstanding (b)(2). Grubbs, 730 F.2d at 246; Taddeo, 685 F.2d at 27.[6]
For these reasons, we conclude that the power to “cure” a default provided by § 1322(b)(5) permits a debtor to de-accelerate the payments under a note secured by a residential property mortgage. And though the chapter 13 petitions in both Grubbs and Taddeo were filed before a judgment of foreclosure was entered, we are not persuaded that the existence of such a judgment in the present case alters the result of those cases. As we have noted, in Wisconsin a judgment of foreclosure does nothing but judicially confirm the acceleration. Though we do not reach the question whether the same result obtains in a state in which the effect of a judgment of foreclosure is different, in Wisconsin such a judgment adds nothing of consequence as far as § 1322(b) is concerned.
The Bank also argues, however, that (b)(5) does not apply to its claim against the Clarks, for as a result of the acceleration the debt had to be paid in full if at all. Thus, the Bank contends, its claim was not a “claim on which the last payment [was] due after the date on which the final payment under the plan [was] due.” 11 U.S.C. § 1322(b)(5). The panel opinion in Grubbs, 718 F.2d 694, 698 (5th Cir.1983), adopted this view. We find this argument unpersuasive. Most notes provide that the lender can accelerate the payments upon any default, and some provide for automatic acceleration. In either case, it is probable that acceleration would occur before the debtor could file a chapter 13 petition. The Bank’s construction would render (b)(5)’s preservation of the ability to cure defaults all but meaningless. At the very least, the Bank’s construction would encourage debtors to file bankruptcy petitions at the earliest possible moment rather than attempt to work out their financial problems short of judicial proceedings. We do not" think that Congress intended cure under (b)(5) to be unavailable to all but the fleet of foot, and we therefore hold that we are to look to the date of the last payment under the note rather than after acceleration has occurred. The result of this is that the Clarks’ plan did nothing that is not permitted by § 1322(b). The decision of the district court is reversed, and the bankruptcy court’s order confirming the plan is affirmed.

. Section 846.102 provides that
[i]n an action for enforcement of a mortgage lien if the court makes an affirmative finding upon proper evidence being submitted that the mortgaged premises have been abandoned by the mortgagor and assigns, judgment shall be entered as provided in § 846.10 except that the sale of such mortgaged premises shall be made upon the expiration of 2 months from the date when such judgment is entered. Notice of the time and place of sale shall be given under §§ 815.31 and 846.16 and may be given within such 2-month period. In this section "abandoned” means the relinquishment of possession or control of the premises whether or not the mortgagor or the mortgagor's assigns have relinquished equity and title.

. Section 846.11 provides that
[i]f any defendant appear and answer that any portion of the mortgaged premises is an exempt homestead the court shall ascertain whether such be the fact, and if so whether the part of the mortgaged premises not included in the exempt homestead can be sold separately therefrom without injury to the interests of the parties, and in that case shall direct in the judgment that the exempt homestead shall not be sold until all the other mortgaged lands have been sold.

. This is in contrast to states in which the mortgage is deemed “merged” with the judgment, effectively transferring title to the mortgagee.

. The Bank obtained its foreclosure judgment after a finding that the Clarks had abandoned the property, which might lead one to the conclusion that the property was not their principal residence. However, the underlying debt was secured by what was, at the time the debt was incurred, the Clarks’ principal residence, and it appears that the Clarks were once again living oil the property at the time of the petition in bankruptcy. That is sufficient to bring the Bank’s claim within the exception to (b)(2).

. See also Note, Despite Pre-Bankruptcy Acceleration of a Mortgage Under State Law, a Debtor Can Cure Default and Reinstate the Original Payment Schedule Under Chapter 13 of the Bankruptcy Code, 52 U.Cinn.L.Rev. 196, 206-07 (1983); Comment, Home Foreclosures Under Chapter 13 of the Bankruptcy Reform Act, 30 U.C.L.A.L.Rev. 637, 658-65 (1983).

. This statement was dictum in Grubbs, as the court went on to determine that the default there was curable under (b)(3), not (b)(5). Grubbs, 730 F.2d at 247. However, given the extensive analysis of the statute and the legislative history, it is rather persuasive dictum.