CELEBREZZE, Senior Circuit Judge,
dissenting.
I agree with the majority that the issue before this Court is whether Cardinal Federal Savings & Loan Association (Cardinal) is entitled to interest on the arrearage. However, since I believe that the majority’s conclusion that Cardinal is entitled to interest on the arrearage contravenes the mandate of 11 U.S.C.A. § 1322(b)(2) (West Supp.1985), I respectfully dissent.
The majority makes two arguments in support of its holding that Cardinal is entitled to interest on the arrearage. Initially, the majority contends that the interest payments are part of “curing [the] default” under 11 U.S.C. § 1322(b)(5) (1982). Next, the majority analogizes Cardinal’s claim to the treatment of secured and unsecured claims under 11 U.S.C. §§ 506(b) & 1325 (1982). I will discuss each argument in turn.
Under 11 U.S.C. § 1322(b)(2) (West Supp. 1985), a plan may not modify the rights of a person holding a security interest in real property which is the debtor’s principal residence. Section 1322(b)(5), 11 U.S.C. § 1322(b)(5) (1982), provides an exception to Section 1322(b)(2): a plan may allow for the “curing” of a default within a reasonable time. According to the majority, the allowing of interest on the arrearage is part and parcel of curing the default. I disagree.
I believe that the contract between the parties determines what constitutes curing a default for purposes of Section 1322(b)(5). If the parties intend to allow interest on arrearage, a provision to this effect must be included in the contract. In re Carr, 32 Br. 343, 345-46 (Bkrtcy.N.D.Ga.1983); In re Christian, 35 Br. 229, 232 (Bkrtcy.N.D.Ga.1983); see In re Simpkins, 16 Br. 956, 964 (Bkrtcy.E.D.Tenn.1982) (“The main point of the special protection of § 1322(b)(2) is to preserve the right to the regular payments as provided in the con *124 tract.”). In my view, to automatically allow interest upon arrearage under the aegis of curing the default, as the majority does, clearly modifies the contract between the creditor and debtor in contravention of Section 1322(b)(2). If the parties fail to include a provision governing arrearage in the contract, as in this case,[1] or include a provision requiring only a nominal penalty charge for late payment, interest on the arrearage may be a windfall to the creditor. For example, under the majority’s opinion, even if the mortgage contract explicitly provided for a four percent interest rate to accrue on arrearage, the creditor under Section 1322(b)(5) would still be entitled to receive the lesser of the prevailing market or the mortgage interest rate. Thus, assuming that the market and the mortgage rate of interest exceed four percent, a creditor may be placed in a better position by virtue of the majority’s interpretation of Section 1322(b)(5) than his position under the contract.[2] I do not believe that Congress intended such a result in enacting Section 1322(b)(5). See In re Clark, 738 F.2d 869, 872 (7th Cir.1984) (“[T]he plain meaning of ‘cure,’ as used in § 1322(b)(2) and (5), is to remedy or rectify the default and restore matters to the status quo ante.”). Moreover, the majority partially undermines its opinion by limiting the interest on arrearage to the maximum amount provided for in the contract; if receiving interest is part of curing the default, then the mortgage rate of interest should not affect the interest rate which the creditor receives on arrearage. In other words, if the contract is irrelevant to determining whether a default has been cured, I fail to understand why the contract should still limit the recoverable interest on arrearage. Based upon the foregoing, I believe that the majority’s interpretation of Section 1322(b)(5) is contrary to Section 1322(b)(2)’s mandate not to alter the partys’ contractual rights.
Second, the majority analogizes Cardinal’s claim to the treatment of claims under 11 U.S.C. §§ 506(b) & 1325 (1982). The majority notes that secured claims under Section 506(b) are entitled to interest and that both secured and unsecured creditors receive interest under Section 1325. See Memphis Bank & Trust Co. v. Whitman, 692 F.2d 427 (6th Cir.1982) (discussing interest on claims under Section 1325(a)(5)(B)); Hardy v. Cinco Federal Credit Union (In re Hardy), 755 F.2d 75 (6th Cir.1985) (discussing interest on claims under Section 1325(a)(4)). These analogies, however, simply miss the point. Cardinal does not have a secured or unsecured claim; rather, Cardinal has a security interest in the Colegrove’s principal residence which is governed by Sections 1322(b)(2) & (b)(5). Accord H.R.Rep. No. 595, 95th Cong., 2d Sess. 429, reprinted in 1978 U.S. Code Cong. & Ad.News 5963, 6384 (“Paragraph (5) concerns long-term debt, such as mortgage debt.”); 124 Cong.Rec. H11089 (daily ed. September 28, 1978) (statement of Rep. Edwards), reprinted in 1978 U.S. *143 Code Cong. & Ad.News 6436, 6481. (“Section 1322(b)(2) of the House amendment represents a compromise agreement between similar provisions in the House bill and Senate amendment. Under the House amendment, the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debtor’s principal residence. It is intended that a claim secured by the debtor’s principal residence may be treated with under Section 1322(b)(5) of the House amendment.”); 124 Cong.Rec. S17406 (daily ed. October 6, 1978) (statement of Sen. DeConcini), reprinted in 1978 U.S.Code Cong. & Ad. News 6505, 6550 (“Section 1322(b)(2) of the House amendment represents a compromise agreement between similar provisions in the House bill and Senate amendment. Under the House amendment, the plan may modify the rights of holders of secured claims other than a claim secured by a security interest in real property that is the debtor’s principal residence. It is intended that a claim secured by the debtor’s principal residence may be treated with under Section 1322(b)(5) of the House amendment.”). Congress in enacting Sections 1322(b)(2) & (b)(5) intended to treat security interests in principal residences different from all other claims. See Grubbs v. Houston First American Savings Association, 730 F.2d 236, 245 (5th Cir.1984) (en banc) (primary purpose of Section 1322(b)(5) to enable a debtor to preserve the equity in his home and to restore and maintain his currency on long-term debt); In re Simpkins, 16 Br. 956, 963 (Bkrtcy.E.D.Tenn.1982) (purpose of Sections 1322(b)(2) & (b)(5) to allow debtors to make regular payments on mortgages and to protect long-term lenders); United Companies Financial Corp. v. Brantley, 6, Br. 178, 189 (Bkrtcy.N.D.Fla.1980) (purpose of Section 1322(b)(2) to provide stability in long-term home financing industry). Thus, Cardinal’s claim cannot be deemed analogous to a secured or unsecured claim; Congress has placed such claims in their own sui generis category. Accordingly, the attempt of the majority to rely upon Sections 506(b) and 1325 is both inappropriate and unpersuasive.
The crux of the majority’s decision is that the allowing of interest on arrearage is necessary to allow the creditor to realize “the full present value of the amount owed.” As a matter of economics, the majority’s assertion may be correct. Nonetheless, I believe that Congress in enacting Sections 1322(b)(2) and 1322(b)(5) expressed its intention to allow the contract between the parties to govern matters such as the interest, if any, to be paid on arrearage. Accordingly, since the imposition of interest upon the arrearage is contrary to the contract in this case, I would affirm the judgment of the district court.

. I note that the mortgage agreement between the Colegroves and Cardinal does contain a provision providing that, "Borrower shall pay to the Note holder a late charge of 4 percent of any monthly installment not received by the Note holder within 15 days after the installment is due.” Apparently, this provision entitles Cardinal to receive four percent interest on arrearage. Nevertheless, the bankruptcy court held that Cardinal failed to produce sufficient evidence to establish that it was entitled to interest on arrearage under the mortgage contract. Since Cardinal has not challenged the bankruptcy court’s finding pertaining to its rights under the mortgage agreement on appeal, I will assume for the purposes of discussion that Cardinal is not .entitled to interest on arrearage under the contract. In any event, if Cardinal was entitled under the contract to four percent interest on arrearage, I would simply allow Cardinal four percent interest on the arrearage as provided by the agreement.

. Of course, many mortgage contracts contain clauses which permit the creditor to accelerate the payment of principal and interest upon the debtor’s default. Nevertheless, since the cure provision of Section 1322(b)(5) permits de-acceleration of these types of clauses, e.g., In re Clark, 738 F.2d 869 (7th Cir.1984); Grubbs v. Houston First Am. Savings Assoc., 730 F.2d 236 (5th Cir.1984) (en banc); Di Pierro v. Taddeo (In re Taddeo), 685 F.2d 24 (2d Cir.1982), I do not believe that the presence or absence of an acceleration provision in the mortgage contract should affect the outcome of this case.