**In re Dan J. FRAZER and Sandra J. Frazer, Debtors.**

**Dan J. Frazer; Sandra J. Frazer, Appellants,**

v.

**Robert G. Drummond, Chapter 13 Trustee; Cheryl L. Britton, Appellees.**

**BAP No. MT–06–1442–SPK.**
**Bankruptcy No. 06–60704–13.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 27, 2007.

Filed Sept. 27, 2007.

R. Clifton Caughron, Debt Relief Law, PLLC, Helena, MT, for Dan and Sandra Frazer.

James A. Patten, Patten, Peterman, Bekkedahl & Green, P.L.L.C., Billings, MT, for Cheryl L. Britton.

Robert G. Drummond, Great Falls, MT, pro se.

Before: SMITH, PERRIS [1] and KLEIN, Bankruptcy Judges.

## OPINION

SMITH, Bankruptcy Judge.

When debtors filed their chapter 13 case,[2] they were in default on a contract for deed involving their principal residence. The bankruptcy court held that § 108(b) trumped § 1322 so that the debtors had only 60 days after the petition date in which to cure the default. The court further determined that the seller was entitled to terminate the debtors' equitable interest in the property without offending the automatic stay provisions of § 362. A timely appeal ensued. Concluding that § 108(b) does not trump § 1322(b), we REVERSE and REMAND.

## I. FACTS

On July 7, 1995, Dan and Sandra Frazer ("Frazers" or "Debtors") purchased their principal residence (the "Property") on a contract for deed ("Contract") from Levi and Barbara Britton.[3] As part of the transaction, both parties deposited documents with an escrow agent.

The Contract provided for a total purchase price of $25,000 with a $4,000 down payment. The $21,000 balance was to be paid in monthly installments of $282 commencing on August 7, 1995, and continuing each month thereafter until the principal and accrued interest was paid in full.

Based on the principal amount, the monthly payment, and the interest rate of 10% per annum, the term of repayment was ten years.[4] Upon proof of the Frazers' compliance with the payment terms of the Contract, the escrow agent would release to the Frazers the warranty deed from Britton.

In the event of a default, Britton, at her election, could declare the Contract in default by sending a written notice to the Frazers and the escrow agent describing the default. Should any default remain uncured for more than 30 days, Britton, at her option, by an additional written notice, could accelerate the entire outstanding balance and, upon non-payment of the accelerated balance after 30 days, she could terminate the Contract and cause a forfeiture of it without further notice. Following termination, Britton would be revested with all right, title, and interest to the property and the escrow agent would deliver to Britton a quitclaim deed from the Frazers and other documents deposited at the inception of the transaction.

By letter dated June 21, 2006, Britton notified the Frazers and the escrow agent that the Frazers were in default for failing to make the May and June 2006 payments and pay the property taxes. The Frazers did not cure the default.

Britton sent another notice to the Frazers on July 25, 2006, notifying them that,

---

1. Hon. Elizabeth L. Perris, Chief Bankruptcy Judge for the District of Oregon, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, Apr. 20, 2005, 119 Stat. 23.

3. On February 25, 2005, Levi and Barbara Britton assigned their interest in the contract for deed to Cheryl Britton ("Britton"), who is the party to this appeal.

4. Although the payment period under the Contract should have expired in 2005, as of the date of the petition, the Frazers still owed over one-half the original balance due. No explanation has been provided to account for this circumstance.

in light of the continuing default, she was electing to accelerate the entire outstanding balance in the amount of $14,147.84 (the "Acceleration Notice"). The Acceleration Notice also provided that failure to pay the outstanding amount within 30 days, including proof of payment of the outstanding property taxes, would result in Britton terminating the Contract without further notice.

On August 25, 2006, before the 30–day cure period under the Acceleration Notice expired, the Frazers filed for chapter 13 relief. As of the petition date, the escrow documents, including the quitclaim deed, remained in the escrow agent's possession.

Debtors filed their original chapter 13 plan on September 11, 2006, which they subsequently amended. The second amended chapter 13 plan provided for full payment of the outstanding debt owed to Britton over a period of 60 months. The confirmation hearing was set for November 7, 2006.[5]

Before the November 7 hearing, Britton filed a "Motion to Determine Applicability of Stay" (the "stay motion"), as well as an objection to the second amended plan ("objection"). In both the stay motion and objection, Britton asserted that under § 108(b)(2), Debtors had 60 days after the filing of the bankruptcy in which to pay the accelerated balance on the Contract. Because the 60–day period had expired without payment in full, Britton urged the court to find that Debtors' rights under the Contract were subject to termination. Based on the foregoing, Britton main-

tained that Debtors could not cure the arrearage through their plan and requested that the court 1) determine that the Contract was not affected by the automatic stay, and 2) allow her to terminate the Contract and recover the escrow documents.

■ On November 3, 2006, two days after Britton filed the stay motion and objection, Debtors filed their third amended chapter 13 plan. The third amended plan again provided for full payment of the outstanding debt owed to Britton, but reduced the payment term from 60 to 36 months. The chapter 13 trustee objected to this version of the plan on the ground that it was infeasible based upon Debtors' income and expenses.[6]

At the November 7 hearing, Debtors conceded that their third amended plan was not confirmable. Accordingly, confirmation was denied. As to the stay motion, the court provided the parties with the opportunity to submit further briefing on the issue of the interplay between §§ 362 and 108(b)(2).

In her supplemental brief, Britton continued to argue that, under relevant case law, the curing of a default under a contract for deed could only be accomplished in accordance with § 108(b) and not through a chapter 13 plan. Debtors, on the other hand, maintained that they were entitled to cure the default through a chapter 13 plan pursuant to § 1322(c)(1), because the Contract was for their principal residence.

**5.** The confirmation hearing was initially set for October 4, 2006, but was continued to November 7, 2006, due to Debtors' inability to attend the October 4 hearing.

**6.** The trustee's objection is not part of the excerpts of record, but can be found on the bankruptcy court docket at number 41 for case no. 06–60704. As part of the court's

docket, we are able to take judicial notice of it. *Harris v. U.S. Trustee (In re Harris),* 279 B.R. 254, 261 n. 4 (9th Cir. BAP 2002) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

■ On December 6, 2006, the court issued its memorandum decision in which it agreed with Britton that Debtors were not entitled to cure the default through a chapter 13 plan and that Britton was entitled to proceed with terminating the Contract.[7] Specifically, the court found that the time period for curing the default was governed by § 108(b), which regulates the tolling of a debtor's right to redeem a foreclosed property, and not by § 1322(b) and (c), which relates to chapter 13 plan provisions, including those related to a debtor's principal residence. Under § 108(b), Debtors had 60 days from the petition date to tender the outstanding amount owing. Because they had failed to cure the default within that time, and because the automatic stay provisions of § 362 did not toll the termination of the Contract, the court granted the stay motion and allowed Britton to terminate the Contract.

An order reflecting the court's ruling was entered on December 6, 2006. Debtors filed a timely notice of appeal on December 7, 2006.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred in finding that a debtor's ability to cure a default under an installment land sale contract[8] for the purchase of the debtor's residence is governed by § 108(b) rather than by § 1322.

## IV. STANDARD OF REVIEW

This appeal presents an issue of law that we review de novo. *Hebbring v. U.S. Trustee,* 463 F.3d 902, 905 (9th Cir.2006).

## V. DISCUSSION[9]

### A. *Property of the Estate*

■ When a bankruptcy petition is filed, an estate is created consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), as created and defined by nonbankruptcy law, *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In other words, the " 'rights a debtor has in property at the commencement of the case continue in bankruptcy—no more, no less.' " *Welborn v. Ruegsegger (In re Welborn),* 75 B.R. 243, 244 (Bankr.D.Mont.1987) (quoting *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1213 (7th Cir.1984)); *see also* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367–68 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6322–24

7. The bankruptcy court's memorandum decision has not been included as part of the record. Nonetheless, we are able to take judicial notice of it and the facts contained therein. *See* case cited *supra* note 6. The memorandum decision can be found on the bankruptcy court docket for case no. 06–60706 at entry 55.

8. The term used in Montana is "contract for deed." These contracts are also commonly known as installment land sale contracts. We use the terms interchangeably.

9. Although Debtors did not immediately file another chapter 13 plan upon denial of confirmation of the plan that Debtors conceded was not feasible, this was understandable in light of the pendency of the stay motion and the subsequent resolution of that motion that was fatal to any use of chapter 13 to save their residence. At oral argument, it was made clear that Debtors intend to propose a plan that will pay the entire balance during the life of the plan. Accordingly, the absence of a pending plan does not undermine the appeal.

(§ 541(a)(1) "is not intended to expand the debtor's rights against others more than they existed at the commencement of the case.").

■ Under Montana law, a purchaser of real property under a contract for deed holds equitable title, *Hannah v. Martinson*, 232 Mont. 469, 758 P.2d 276, 278 (1988), and, upon default, has a right to cure that default by tendering full payment in accordance with Montana Code § 28–1–104.[10] *Burgess v. Shiplet*, 230 Mont. 387, 750 P.2d 460, 462 (1988).

■ In this case, on the date Debtors' petition was filed, the time to cure under the Contract had not expired and forfeiture of Debtors' rights under the Contract had not been completed. Therefore, Debtors retained an equitable interest in the property that became property of the estate, including the right to cure the default.

■ The bankruptcy court accepted Britton's argument that her acceleration of the balance due under the contract as of the time of filing the case operated to extinguish Debtors' equitable interests in the Property because the time to cure under both Montana law and § 108(b) passed postpetition without cure or confir-

mation of a chapter 13 plan providing for cure. We disagree.

The question is whether Debtors' right to cure is limited by the time provided for cure of defaults under § 108(b), or instead is governed by the provisions of chapter 13. As a matter of Ninth Circuit jurisprudence, this case presents a matter of first impression.

### B. *Right to Cure Defaults*

Britton concedes that Debtors still had an interest in the property on the date of filing, but she argues that, pursuant to § 108(b), that interest was limited to either curing the default or confirming a chapter 13 plan that provided for cure of the default [11] within sixty (60) days after Debtors filed their petition. Debtors argue that their right to cure is governed by § 1322, particularly § 1322(c)(1), which allows them to cure the default until a foreclosure sale is held. Because there has not been a foreclosure sale or its functional equivalent in this case, Debtors argue that they can cure the default through their chapter 13 plan.

#### 1. *Chapter 13 Plan Provisions*

The mandatory and optional provisions of a chapter 13 plan are set forth at § 1322. 11 U.S.C. § 1322.[12] Several pro-

---

**10.** Montana Code § 28–1–104 states that a defaulting party to a contract for deed can obtain relief from forfeiture "upon making full compensation to the other party."

**11.** Section 108(b) is not inconsistent with the § 1322 provisions allowing cure because the "Frazers could have provided for payment of the accelerated balance through a Chapter 13 plan as long as confirmation was obtained within 60 days from the commencement of the case, in which case Britton would have been bound to the terms of the Plan." Britton's Brief, p. 16.

**12.** As relevant to the issues presented in this case, § 1322 provides:

(b) Subject to subsections (a) and (c) of this section, the plan may—

. . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, . . .

(3) provide for the curing or waiving of any default;

. . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due

visions relate to the cure of defaults through a chapter 13 plan.

■ As a general proposition, § 1322(b)(3) permits a chapter 13 plan to "provide for the curing or waiving of any default." 11 U.S.C. § 1322(b)(3). This provision applies to a default on a debt secured by an interest in a debtor's principal residence. Although the Code forbids modification in chapter 13 of the rights of a creditor whose claim is secured solely by an interest in the debtor's principal residence (*i.e.* change the length of the contract or amount of the balance), curing a default through a chapter 13 plan does not constitute modification of the creditor's interests. 11 U.S.C. § 1322(b)(2). *See, e.g., Litton v. Wachovia Bank (In re Litton),* 330 F.3d 636, 644 (4th Cir.2003) (restoring the debtor and creditor to their respective positions under the contract by rectifying the prepetition default on a home mortgage debt pursuant a chapter 13 plan is considered to only cure the default and not modify the creditor's rights); *Jim Walter Homes, Inc. v. Spears (In re Thompson),* 894 F.2d 1227, 1228 (10th Cir.1990) ("contractual acceleration of mortgage debt upon default does not end the debtor's right to cure the mortgage default in bankruptcy"); *Clark v. Fed. Land Bank of St. Paul (In re Clark),* 738 F.2d 869, 874 (7th Cir.1984) (power to cure a default allows the debtor to de-accelerate payment under a note secured by residential property).

■ Section 1322(b)(5) allows a debtor to cure a default within a reasonable time and to maintain payments during the case with respect to a claim on which the last payment is due after the due date of the final plan payment. 11 U.S.C. § 1322(b)(5). The reasonable time to cure, however, is limited by § 1322(c)(1), which states:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
>
> (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) *until such residence is sold at a foreclosure sale* that is conducted in accordance with applicable nonbankruptcy law[.]

11 U.S.C. § 1322(c)(1) (emphasis added).

According to Debtors, the default under the Contract may be cured through their chapter 13 plan under the authority of § 1322(c)(1). They argue that § 1322(c)(1) was created by Congress to provide a debtor the opportunity to cure defaults involving his principal residence over a period of time through the chapter 13 plan process. Because the Contract specifically involves a secured indebtedness related to their principal residence and there has not been a foreclosure sale, they believe they are entitled to utilize § 1322(c)(1) for the purpose of curing the default through their chapter 13 plan.

■ Although we agree with Debtors that § 1322(c)(1) is intended to enhance a debtor's ability to save his or her home through chapter 13, we are not persuaded that Congress contemplated its use in situations where the security device is not subject to a foreclosure sale.[13]

---

after the date on which the final payment under the plan is due[.]

13. Prior to the enactment of subsection (c), courts were divided on when in the course of a *foreclosure proceeding* a debtor lost the right to cure under § 1322(b). *See generally Oregon v. Hurt (In re Hurt),* 158 B.R. 154 (9th Cir. BAP 1993) (discussing the conflicting case law regarding when a debtor's right to cure a default on a home mortgage under § 1322(b)(5) ends). Congress reacted to the split in authority by enacting § 1322(c)(1) as part of the 1994 Code amendments in order to "safeguard[ ]" a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion

■ For § 1322(c)(1) to be applicable, there must be, first, a default with respect to a lien on the debtor's principal residence and, second, the possibility of a *foreclosure sale,* whether strict, judicial, or nonjudicial, pursuant to nonbankruptcy law.

Here, Debtors can establish that the Contract exclusively dealt with their principal residence and that Britton held a lien-type interest on the property based on the fact that Montana law treats the contract for deed as a security device. *See Horton v. Rehbein (In re Rehbein),* 60 B.R. 436, 440 (9th Cir. BAP 1986) (a contract for deed is merely a financing arrangement for a sale in which the vendor retains legal title only as security for the price); *Kane v. Inhabitants of the Town of Harpswell (In re Kane),* 248 B.R. 216, 223 (1st Cir. BAP 2000) ("courts have often treated [installment land sales contracts] as secured debts"); *In re McCallen,* 49 B.R. 948, 952 (Bankr.D.Or.1985) ("under appropriate circumstances land sale contracts should be treated as liens"); *In re Carr,* 52 B.R. 250, 253 (Bankr.E.D.Mich. 1985) ("Although land contracts are, strictly speaking, agreements which might be called executory until payments are completed and the deed transferred, such conveyances have been treated as security devices, creating a security interest in the vendor[.]"); *In re Cox,* 28 B.R. 588, 590 (Bankr.D.Idaho 1983) (in a contract for sale situation, a vendor holds only a lien on the property as security for the price); *In re Booth,* 19 B.R. 53, 58 (Bankr.D.Utah 1982) (contract for deed in which the debtor is the buyer creates an interest in the seller equivalent to that of the lien).

■ Debtors' § 1322(c)(1) argument fails, however, because under Montana law, there is no foreclosure sale (or a functional equivalent) where the security device is a contract for a deed.

■ While similarities exist between a mortgage and a contract for deed, Montana law views them as separate legal concepts. *Aveco Props., Inc. v. Nicholson,* 229 Mont. 417, 747 P.2d 1358, 1360–61 (1987); *Glacier Campground v. Wild Rivers, Inc.,* 182 Mont. 389, 597 P.2d 689, 698 (1978) (a contract for deed and a mortgage are "distinct legal creatures").

■ In Montana "[a] contract for deed [is] not [to] be treated as a mortgage for purpose of foreclosure." *Aveco Props., Inc.,* 747 P.2d at 1361. In this respect Montana law differs from the law of states that treat contracts for deed (a.k.a. installment land sale contracts) as mortgages. *See In re Brooks,* 324 B.R. 56, 59 (Bankr. N.D.Ill.2005) ("under Illinois law ... a contract [for deed] is treated as a mortgage"); *Anderson Contracting Co. v. Daugherty,* 274 Pa.Super. 13, 417 A.2d 1227 (1979) (Pennsylvania law).

■ This means that a seller under a Montana land sale contract need not invoke a judicial or statutorily created remedy to foreclose the rights of the purchaser as must a mortgagee who wishes to foreclose the mortgagor's equity of redemption. *See Aveco Props., Inc.,* 747 P.2d at 1360. A purchaser on a Montana contract for deed who has defaulted is therefore limited to the remedies available pursuant to the contract's provisions and cannot look to mortgage law for alternative remedies.[14] *Burgess,* 750 P.2d at 462; *see also*

of a foreclosure sale." 140 Cong. Rec. H 10769 (Oct. 4, 1994), *reprinted in,* 1994 U.S.C.C.A.N. 3340, 3361; *In re Crawford,* 232 B.R. 92, 95 (Bankr.N.D.Ohio 1999); 8 *Collier on Bankruptcy* ¶ 1322.15 (15th ed. rev.2007).

14. While limiting a defaulting buyer to the exclusive remedies associated with a contract for deed may seem unduly rigid, the Montana Supreme Court holds that there is no room for courts to alter this result. *Burgess,* 750

*In re Henke*, 84 B.R. 693, 696 (Bankr. D.Mont.1988).

Here, the Contract is a contract for deed, and not a mortgage. Thus, under Montana law, no foreclosure sale (or equivalent procedure) is required to terminate Debtors' interest under the Contract. *Aveco Props., Inc.*, 747 P.2d at 1361. If Debtors defaulted on the Contract and failed to cure the default within the allotted time, the Contract would terminate and Britton could declare Debtors' rights forfeited without any court proceeding, provided proper notice of the forfeiture is given. Because no foreclosure sale is required to be held prior to forfeiture of a contract for deed, we agree with the bankruptcy court that § 1322(c)(1) does not apply. Our analysis, however, does not end here.

■■■ The fact that § 1322(c)(1) does not apply in this situation does not deprive Debtors of the ability to employ a chapter 13 plan to cure the default on the contract for deed. Section 1322(c)(1) simply governs the time within which to cure a default that is within its terms. When § 1322(c)(1) does not apply, the debtor nevertheless is left with the other cure provisions of § 1322(b), which provide that a debtor may cure a default and maintain payments on a debt payable beyond the expiration of the plan, so long as that cure is made within a reasonable time. 11 U.S.C. § 1322(b)(3) & (b)(5).

■■■ Curing of a default "commonly means taking care of the triggering event and returning to pre-default conditions." *Great W. Bank & Trust v. Entz–White*

*Lumber & Supply, Inc. (In re Entz–White Lumber & Supply, Inc.)*, 850 F.2d 1338, 1340 (9th Cir.1988) (chapter 11 case quoting chapter 13 case, *Di Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24, 26–27 (2d Cir.1982)). Thus, the plain meaning of "cure," as used in § 1322(b)(3) and (5), provides a debtor with the right to remedy a default and restore matters to the status quo ante. *In re Clark*, 738 F.2d at 872. In other words, cure will nullify all consequences of default. *Casa Blanca Project Lenders, L.P. v. City Commerce Bank (In re Casa Blanca Project Lenders, L.P.)*, 196 B.R. 140, 143 (9th Cir. BAP 1996).

Acceleration of a debt is a common consequence of a default in payments in a contract for deed situation. Most contracts for deed are like the one Debtors executed here and provide that the seller can accelerate the payments upon default. Because to cure means to restore matters to the way they were prior to default, "the power to cure [under § 1322(b)] must comprehend the power to 'de-accelerate'" the payments on the Contract. *In re Taddeo*, 685 F.2d at 26; *see also Downey Savs. & Loan Ass'n v. Metz (In re Metz)*, 820 F.2d 1495, 1497 (9th Cir.1987) ("Chapter 13 allows a mortgagor debtor to cure a prepetition acceleration of home mortgage debt triggered by default.").

Unless some other provision of the Code trumps these chapter 13 plan cure provisions, Debtors are entitled to cure the default within a reasonable time and reinstate the debt, despite the nonapplicability of § 1322(c)(1).

---

P.2d at 462. The Montana legislature intends contracts for deeds and mortgages to be treated differently:

> When a purchaser enters into a contract for deed with a seller, he or she runs the risk of defaulting on the required payments and facing the consequences of losing the property along with forfeiting the amount already paid. If this produces a harsh or unwanted result, it is for the legislature to remedy and not the job of [courts] to change the plain meaning of the contract. *Id.*

### 2. *Section 108(b)*

 Britton does not argue that Debtors do not propose to cure within a reasonable time; instead, she relies on the time limit of § 108(b) to argue that Debtors' right to cure was cut off by the passage of time. Section 108(b) provides that, where an agreement fixes a period within which the debtor may cure a default, "the [debtor] may only ... cure ... before the later of" the date specified or 60 days after the order for relief. 11 U.S.C. § 108(b).[15] Generally speaking, § 108(b) provides for the extension of statutory and contractual time periods for the purpose of preserving assets for the benefit of the bankruptcy estate.[16]

In this case, on the date of filing, Debtors were parties to an agreement that provided for a specific period within which to cure the default or forfeit their rights under the contract. Applying § 108(b) would have given Debtors until October 24, 2006 (60 days following the petition date) to cure the default. Because Debtors did not confirm a plan by that date, Britton argues, and the bankruptcy court agreed, that Debtors' right to cure the default through their plan had been cut off. Thus, the question is whether Debtors' right to cure the default on the contract for deed is governed by § 108(b) or by the cure provisions of § 1322.

### 3. *Chapter 13 Plan Cure Provisions Trump the General Cure Provision of § 108(b)*

 The legislative history behind chapter 13 relief supports and promotes debtor rehabilitation. *Tinley Park Bank v. Phelps (In re Kokkinis)*, 22 B.R. 353, 354–55 (Bankr.N.D.Ill.1982) ("debtor rehabilitation is the pervasive theme" of chapter 13); *see* H.R.Rep. No. 95–595, 95th Cong. (1977), *reprinted in* 1978 U.S.C.C.A.N 5963; S.Rep. No. 95–989, 95th Cong. (1978), *reprinted in* (1978) U.S.C.C.A.N 5787; Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93–137, 93d Cong., Pt. 1 (1973), *reprinted in* App. 2 *Collier on Bankruptcy* (15th ed.1980).

 Chapter 13 is designed to facilitate debtor rehabilitation by providing a debtor with the ability to adjust his or her debts through a flexible repayment plan. *See* H.R.Rep. No. 95–595, 95th Cong. 118 (1977) *reprinted in* 1978 U.S.C.C.A.N 5963, 6079. Thus, in chapter 13, we look to the specific provisions of § 1322 to govern what a debtor may include in a chapter 13 plan to meet his or her needs.

---

**15.** Section 108(b) states,
> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

**16.** Section 108(b) is intended to provide the *trustee* with an extension of time to take action necessary to protect the debtor's prepetition rights. *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 30, *reprinted in*, 1978 U.S.C.C.A.N. 5787, 5816. In a chapter 13 case, the debtor enjoys certain rights of a trustee. *See* 11 U.S.C. §§ 1303 (authorizes the debtor to use property of the estate) and 1306(b) (permits the debtor to remain in possession of all property of the bankruptcy estate).

Section 108(b), on the other hand, is a provision of general applicability in the Bankruptcy Code. It is not directed specifically at chapter 13 default cures, as is § 1322. We conclude that the more specific cure provisions of § 1322, which govern chapter 13 plans, apply rather than the more general provision of § 108(b), which applies in general to bankruptcy cases. *See, e.g., D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling."); *Coleman Oil Co. v. Circle K Corp. (In re Circle K Corp.),* 127 F.3d 904, 909 n. 4 (9th Cir.1997) ("The curing of defaults in an executory contract or unexpired lease is governed by section 365, not by the ... provisions of section 108(b)."); *Moody,* 734 F.2d at 1215–16 (same); 2 *Collier on Bankruptcy* ¶ 108.03[3] (15th ed. rev.2007).

The Supreme Court's decision in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), cannot be ignored. In *Whiting Pools,* the debtor had an interest in property, as of the date of filing bankruptcy, that a secured creditor seized prepetition. The Supreme Court concluded that the property was property of the estate that could be used on the condition that adequate protection be provided. *Id.* at 204, 103 S.Ct. 2309. The creditor must look to the Bankruptcy Code's adequate protection provision, rather than to its nonbankruptcy remedies. *Id.* The Supreme Court pointed out that the Bankruptcy Code "modifies the procedural rights available to creditors to protect and satisfy their liens" and that the protections it provides "replace the protection afforded by" nonbankruptcy

law. *Id.* at 206–07, 103 S.Ct. 2309. These fundamental propositions inform the analysis regarding the implications of the Bankruptcy Code authority under § 1322 to cure defaults. The Supreme Court's *Whiting Pools* analysis is not consistent with postpetition insistence on strict compliance with a short-fused state law redemption procedure when a debtor is proposing to cure a default through a plan. Hence, it supports our conclusion that § 108 does not trump § 1322.

In sum, the cure provisions of § 1322 afford Debtors a reasonable time to cure the default on the Contract. There is no argument that the time in which Debtors propose to cure under a chapter 13 plan is unreasonable. Therefore, Debtors are entitled to cure the default through their plan and reinstate the debt.[17]

## VI. CONCLUSION

When Debtors filed for chapter 13 relief, their equitable interest in the Property had not been terminated. This interest gave them the right to de-accelerate the Contract and cure any defaults related to it under § 1322(b)(3) and maintain any payments pursuant to it under § 1322(b)(5) through their chapter 13 plan. We therefore REVERSE the bankruptcy court's order denying confirmation and REMAND.

---

**17.** Although we hold that Debtors can cure the Contract through their chapter 13 plan, whether they will be able to confirm a plan is unknown at this time. As of the filing date of this opinion, there is no indication on the bankruptcy court's docket that Debtors have been successful in confirming a plan.