In re Barbara K. FRANCIS, Debtor.

Barbara K. Francis, Movant,

v.

Scorpion Group, LLC, Respondent.

Scorpion Group, LLC, Movant,

v.

Barbara K. Francis, Respondent.

No. 12–73183–WLH.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

March 13, 2013.

Mario Marty L. Adkins, Atlanta, GA, for Debtor.

Julie M. Anania, Nancy J. Whaley, Standing Chapter 13 Trustee, Atlanta, GA, Trustee.

## OPINION

### CONTESTED MATTER

WENDY L. HAGENAU, Bankruptcy Judge.

Before the Court are several matters, all related to Scorpion Group, LLC ("Scorpion") and the Debtor's right to pay to Scorpion through a Chapter 13 plan the redemption price payable to a purchaser at a tax sale under Georgia law. The pending motions are: Scorpion's Motion for Relief from Automatic Stay [Docket No. 20], the Debtor's Motion to Re–Impose the Stay, as amended [Docket No. 57, 61], the Debtor's Motion to Pay the Claim of Respondent Directly from Property of the Estate [Docket No. 66], and the Debtor's Motion to Determine the Secured Status of Scorpion's Claim, as amended [Docket Nos. 51 and 62] (collectively, the "Motions"). This Court has jurisdiction of the Motions pursuant to 28 U.S.C. § 1334 and the Motions are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (G), (L) and (O).

### Facts

Scorpion purchased the property at 2298 Lancer Road ("Property") for $9,500.00 on August 2, 2011 at a tax sale conducted by the Sheriff of DeKalb County. The levy and sale of the Property was for unpaid ad valorem taxes for 2010. The Debtor was the owner of the Property. At the time of the tax sale, Wells Fargo Bank, N.A. as successor to Wachovia Bank National Association held a security deed on the Property securing over $155,000, but it has recently released the security deed. The Debtor's schedules reflect the Property is rental property worth approximately $40,700, so, if the Property is the Debtor's or the Debtor can redeem it, there is equity in it for use in paying the unsecured creditors. The proof of claim filed by Scorpion [Claim No. 2–1] shows that the price to redeem the Property as of the petition date was $14,382.19, increasing over time with potential taxes and other premiums.

On August 3, 2012, the Debtor was served with a Notice of Foreclosure of Equity of Redemption (referred to herein as the "Barment Notice"). The Barment Notice stated that the right to redeem would expire on and after September 18, 2012. Scorpion also ran ads in the newspaper as required by O.C.G.A. § 48–4–45. The Debtor did not tender the redemption price, but instead filed a petition under Chapter 13 of the United States Bankruptcy Code on September 17, 2012. On the same day, the Debtor filed a Chapter 13 plan proposing to pay to Scorpion the redemption price "in full" over the 60–month applicable commitment period. The Debtor has not contested Scorpion complied with the barment process.

Scorpion filed a Motion for Relief from Stay on October 26, 2012 [Docket No. 20], arguing the stay should be lifted because the Debtor could not pay the redemption price through the plan and the Property was not property of the estate. After a hearing, the Court ruled that the stay would be lifted because, with Wells Fargo's security deed on the Property in the amount of over $155,000, there was no equity in the Property for the Debtor. Since the Property was rental property, the Court found it was not necessary for a reorganization. The Court entered an order on January 18, 2013 [Docket No. 52] granting the Motion for Relief from Stay. On January 25, 2013, the Debtor filed a Motion to Re–Impose the Stay [Docket No. 57], amended on January 29, 2013 [Docket No. 61] based on the Debtor's receipt of a notice from Wells Fargo that it had released the security deed. Since the release of the security deed created the possibility of equity in the Property, the

Court granted the Motion to Re–Impose Stay by order entered February 27, 2013 [Docket No. 82]. The Debtor also filed a Motion to Determine the Secured Status of Scorpion's Secured Claim on January 7, 2013 [Docket No. 51], amended on January 29, 2013 [Docket No. 62], arguing that Scorpion had miscalculated the interest and charges due under O.C.G.A. § 48–4–42. Finally, the Debtor decided she could and wanted to tender the full redemption price to Scorpion, so she filed a Motion to Pay Claim of Respondent Directly from Property of the Estate on February 13, 2013 [Docket No. 66].

### Georgia Law on Tax Sales

Under Georgia law, taxes are assessed against real property as of January 1 of each year, and the taxpayer holding the property as of January 1 is responsible for "returning" it. O.C.G.A. § 48–5–10. "Liens for all taxes due the state or any county or municipality in the state shall arise as of the time the taxes become due and unpaid and all tax liens shall cover all property in which the taxpayer has any interest from the date the lien arises until such taxes are paid." O.C.G.A. § 48–2–56(a). If taxes are not timely paid, the tax commissioner may, after notice to the property owner, issue executions [1] to the sheriff to levy upon the property of the taxpayer. O.C.G.A. § 48–3–1 et seq.[2] The statute provides that:

> Whenever any real property is sold under or by virtue of an execution [fi fa] issued for the collection of state, county, municipal, or school taxes or for special assessments, the defendant in fi. fa. or any person having any right, title, or interest in or lien upon such property may redeem the property from the sale by the payment of the redemption price or the amount required for redemption, as fixed and provided in Code Section 48–4–42:
> (1) At any time within 12 months from the date of the sale; and
> (2) At any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for in Code Section 48–4–45.

O.C.G.A. § 48–4–40. Under this statute then, the Debtor (who is the defendant in fi fa) had an absolute right to redeem the Property for the first year after the tax sale. After that, the right to redeem could be foreclosed by the purchaser at the tax sale through the barment procedure set out in O.C.G.A. § 48–4–45. This section provides,

> After 12 months from the date of a tax sale, the purchaser at the sale ... may terminate, foreclose, divest, and forever bar the right to redeem the property from the sale by causing a notice or notices of the foreclosure, as provided for in this article ...

The notices must be served on those with an interest in the property and must be published in the newspaper in the applicable county once a week for four consecutive weeks. The specific form of notice is set out in O.C.G.A. § 48–4–46, and Scorpion used the form in this case. Further, O.C.G.A. § 48–4–42 spells out the amount to be paid on redemption, including certain redemption premiums. The "redemption price", as defined in O.C.G.A. 48–4–42, is

---

**1.** An execution and a writ of *fieri facias* or (*fi fa*) are used synonymously in Georgia. *Black v. Black*, 245 Ga. 281, 264 S.E.2d 216 (1980).

**2.** Alternatively, state law authorizes ad valorem tax foreclosures, if authorized by local ordinance. O.C.G.A. § 48–4–75 et seq. This foreclosure process requires a judicial determination prior to the foreclosure sale. The redemption rights of the debtor are limited under this foreclosure process. O.C.G.A. §§ 48–4–80 and 48–4–81. This foreclosure process was not used here.

to be paid to the purchaser at the tax sale. Lastly, O.C.G.A. § 48-4-43 provides, "When property has been redeemed, the effect of the redemption shall be to put the title conveyed by the tax sale back into the defendant in *fi fa*, subject to all liens existing at the time of the tax sale...."

The parties here do not dispute the giving of the barment notice, but they dispute when the right to redeem expired. The Debtor argues the right to redeem expired on September 18, 2012, the date identified in the barment notice. Scorpion argues the right to redeem expired at 11:59 p.m. on September 17, 2012 because the barment notice states that the Debtor's right to redeem will expire "on and after September 18, 2012". The Debtor filed her petition under the Bankruptcy Code on September 17, 2012, at 9:14 a.m., so under either argument, the Debtor's right to redeem had not expired as of the filing of the petition. The Court must then consider what rights the Debtor possessed at the time the petition was filed that became property of the estate.

### Property of the Estate

Section 541(a) of the Bankruptcy Code defines "property of the estate" broadly as "all legal or equitable interests of the debtor in property as of the commencement of the case". Whatever rights the Debtor had after the tax sale, legally or equitably, came into the estate.

Under Georgia law, a tax sale purchaser holds an inchoate or defeasable title to the property purchased. *Brown Inv. Group, LLC v. Mayor & Aldermen of City of Savannah*, 289 Ga. 67, 709 S.E.2d 214 (2011). The tax sale purchaser is not entitled to rent or possession during the period of redemption, *Small v. Irving*, 291 Ga. 316, 729 S.E.2d 323 (2012); the defendant in *fi fa* is—here, the Debtor. If Scorpion had come onto the Property, it would have been liable for trespass.

*Brown Inv. Group*, 289 Ga. at 68, 709 S.E.2d 214. The Georgia Supreme Court has held that a tax deed purchaser has no more right to go on or use property purchased at a tax sale than a stranger to the title. *Brown Inv. Group*, 289 Ga. at 68, 709 S.E.2d 214. In *Brown Inv. Group*, the Supreme Court held the purchaser at a tax sale could not recover from the city for demolishing a building on property sold to the purchaser at a tax sale without notice to the purchaser. Only the debtor in *fi fa* has standing to sue for trespass until the right of redemption is terminated.

Scorpion emphasizes it already holds legal title to the Property as a result of the tax sale and therefore the Property is not property of the estate. Holding legal title is an important factor, but not the determinative factor as to whether the Property or any interest therein is property of the estate. For example, the holder of a security deed in Georgia holds legal title to the property. O.C.G.A. § 44-14-60. The interest retained by the grantor is an equitable title with a right of redemption, *Citizens' & Southern Bank v. Realty Savings & Trust Co.*, 167 Ga. 170, 144 S.E. 893 (1928), much like an owner after a tax sale. Courts consistently view property subject to a security deed as property of the estate and the legal title holder as the holder of a claim. A further example that holding legal title does not end the inquiry is 11 U.S.C. § 541(d). If Scorpion were a debtor, Section 541(d) provides that the Property itself would not be property of Scorpion's estate. This is further proof that bare legal title alone is not enough to eliminate the debtor's rights in the Property.

So, as of the petition date, the Debtor had all the rights to the Property other than legal title. She had possession, use, the right to bar access, and the right

to redeem. The rights the Debtor had as of the petition filing were property of the estate. The question though is, what can she do with them?

■ Scorpion urges that the only right the Debtor had was to tender the redemption price in a lump payment within the original redemption period as extended by the 60 days provided in 11 U.S.C. § 108(b). There is no doubt the Debtor had that right; the Debtor could have tendered the full redemption price within the 60 days provided by Section 108(b). That time period, however, expired on November 16, 2012, and the Debtor did not tender a lump sum to Scorpion within that time period. She did, however, file a plan proposing to redeem the property and stating that she would make payment in full. Several courts have raised the possibility that redemption could be accomplished by the Debtor taking affirmative steps such as filing a plan within the redemption period to pay the redemption price in full. *See In re Lewis*, 137 F.3d 1280 (11th Cir.1998) (vehicle repossession under Alabama law); *In re Moore*, 448 B.R. 93 (Bankr.N.D.Ga. 2011) (pawn transaction under Georgia law). Neither case decided the issue because in neither of those cases had the debtor actually filed such a plan. In each case, the debtor had proposed a plan that was going to pay less than the full amount required under applicable state law. By contrast, the Debtor here filed a plan on the petition date within the *original* redemption period to pay the redemption price in full with additional interest. Filing a plan during the redemption period, however, is only effective if Scorpion's rights can be characterized as a claim under 11 U.S.C. § 101 because only claims can be paid, modified, or cured under 11 U.S.C. § 1322(b). If Scorpion does not hold a claim, then filing a plan, whether within the original or extended redemption period, is ineffective because the plan can only affect claims.

### Scorpion's Claim

■ Section 101(5) of the Bankruptcy Code defines a claim as

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

The Supreme Court has discussed the scope of a claim on at least two occasions, in *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) and *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). In both cases, the Supreme Court noted that Congress took a broad view of "claim", since the legislative history stated the definition of "claim" was to be the broadest possible. *Johnson*, 501 U.S. at 83, 111 S.Ct. 2150.

In the *Davenport* case, the Supreme Court considered whether an obligation to pay criminal restitution was a "debt" under the Bankruptcy Code and therefore dischargeable. A "debt" under 11 U.S.C. § 101(12) means liability on a claim. The court held the meaning of "debt" and "claim" are coextensive. 495 U.S. at 558, 110 S.Ct. 2126. The court then analyzed the meaning of "claim". The Pennsylvania Department of Welfare argued the debtor could not be forced to pay pursuant to the typical debtor/creditor remedies. But the Supreme Court held that was not the determining factor. Rather, the question for

the court was whether the debtor had an enforceable obligation. *Id.* Although the obligation could not be enforced in civil proceedings, the obligation was enforceable "by the substantial threat of revocation of probation and incarceration." *Id.* at 559, 110 S.Ct. 2126. The court found the criminal restitution an enforceable obligation and therefore a claim.

Next, in *Johnson,* the court held that a lien on property is a claim, regardless of whether the debtor has any personal liability for it. There, the debtor had been discharged in a prior Chapter 7 case. Nevertheless, the creditor's right to foreclose on a lien on the debtor's real property passed through the bankruptcy case unaffected. The debtor subsequently filed a Chapter 13 case and proposed to pay the lender through the Chapter 13 plan. The lender argued it held no claim to be modified in the plan, because the debtor had no personal liability to the lender. The Supreme Court disagreed. Because the lender had a claim to the debtor's property, the lender held a "claim" for bankruptcy purposes. The court noticed the surviving mortgage interest and right to foreclose corresponded to "an enforceable obligation" of the debtor. *Johnson,* 501 U.S. at 84, 111 S.Ct. 2150. Moreover, 11 U.S.C. § 102(2) provides that a claim against the debtor includes a claim against property of the debtor. It is clear, therefore, a debt that is non-recourse for any reason is nevertheless a claim.

The bankruptcy court in *In re Bates,* 270 B.R. 455 (Bankr.N.D.Ill.2001), tackled the question of what is a claim in the context of a tax sale, following the Supreme Court's guidance. The bankruptcy court in the *Bates* case concluded that because the penalty for not paying the redemption price is losing the property, the tax sale purchaser holds a claim under the *Davenport* analysis. *Id.* at 464. Moreover, the court held that a landown-er's "duty to pay the redemption amount", or lose the property, is no different from the duty to pay a non-recourse mortgage. "In either situation, the landowner has no direct personal obligation to make payment, but the consequence of nonpayment is the loss of the landowner's property." *Id.* at 463–64. The court concluded the tax sale purchaser held a claim to be treated in a Chapter 13 plan.

Both analyses hold true in this case as well. First, under Georgia law, it is the rights the debtor retains after the tax sale that Scorpion claims. Scorpion wants the Debtor's remaining equitable rights to be eliminated, and it was attempting to foreclose those rights. It wants the right to possession of the Property, the right to use the Property, the right to rent the Property, and the full 100 percent fee interest in the Property. The foreclosure process, however, was not completed at the time the bankruptcy petition was filed. The Debtor is in much the same position as the owner of property subject to a non-recourse lien. Even if the Debtor is not personally liable to Scorpion in a civil proceeding, the Debtor's underlying obligation remains enforceable against her property. Consequently, Scorpion holds a claim for the Debtor's equitable interest remaining in the Property, including her right to use it and to possess it, or the monetary value thereof (the redemption price).

The definition of claim also includes a right to an equitable remedy for breach of performance if the breach gives rise to payment. The Supreme Court in *Johnson* stated that a "surviving right to foreclose" is a right to an equitable remedy "for the debtor's default on the underlying obligation". 501 U.S. at 84, 111 S.Ct. 2150. Similarly, in *In re Udell,* 18 F.3d 403 (7th Cir.1994), the court noted that "[i]f the right to payment is an 'alternative' to the right to an equitable remedy, ... the two remedies would be substitutes for one an-

other" and satisfy the definition of "claim". *Id.* at 408. Here, the Debtor breached her obligation to pay taxes, which led to the tax sale, and ultimately to the right of Scorpion to foreclose. But the law provides that Scorpion's right to foreclose can be eliminated by the payment of the redemption price. Scorpion holds a claim because it wants the Debtor's interest in the Property and state law defines in monetary terms what it takes to eliminate or satisfy Scorpion's right to obtain that interest in Property. There is no question this claim can be translated into monetary terms because the state law sets out those terms.

■ The Court holds that Scorpion holds a claim as defined in 11 U.S.C. § 101. Moreover, the claim is a secured claim under 11 U.S.C. § 506(a), because Scorpion's claim is secured by a lien. A "lien" is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). As discussed above, Scorpion holds legal title to the Property to secure performance of the Debtor's obligation to pay the redemption price or lose all interests in the Property. It holds a secured claim.

### Chapter 13 Treatment

■ Section 1322(b) then allows for the treatment of claims, including this one held by Scorpion. A number of courts have considered the reconciliation of 11 U.S.C. § 108, which extends the time to exercise certain rights, with 11 U.S.C. § 1322. Compare *In re Frazer,* 377 B.R. 621 (9th Cir. BAP 2007); *In re Romious,* 487 B.R. 883 (Bankr.N.D.Ill.2013) and multiple Illinois cases cited therein following *Bates; In re Hammond,* 420 B.R. 633 (Bankr.W.D.Pa.2009); *In re Stevens,* 374 B.R. 31 (Bankr.D.N.H.2007); and *In re Pellegrino,* 284 B.R. 326 (Bankr.D.Conn. 2002) with *In re Froehle,* 286 B.R. 94 (8th

Cir. BAP 2002); *In re Rugroden,* 481 B.R. 69 (Bankr.N.D.Cal.2012); and *In re Sims,* 185 B.R. 853 (Bankr.N.D.Ala.1995). While the analysis varies, this Court agrees with those decisions that conclude Section 108 was meant to expand the state law rights of debtors. It was not meant to limit the rights the Bankruptcy Code otherwise provides the debtor. *Bates,* 270 B.R. at 466 ("nothing in Section 108(b) transforms the extension of a non-bankruptcy right into a negation of bankruptcy rights specifically accorded elsewhere in the Code"). Therefore, Scorpion's claim can be treated in the Debtor's Chapter 13 plan.

The facts of this case are important to the Court in reaching this conclusion and in distinguishing this decision from other decisions, in this Circuit and elsewhere, and other cases that may come before the Court in the future. First, the redemption period had not expired at the time the petition was filed. Second, within the original redemption period, the Debtor filed a plan proposing to pay Scorpion's claim in full. Third, although the Debtor seeks to "modify" the claim in terms of the period of time over which it is paid, the Debtor is not seeking and has not sought to modify Scorpion's claim in terms of the amount due or payable. Fourth, this Property is not a personal residence and is therefore not subject to the considerations of 11 U.S.C. § 1322(c). Finally, Scorpion is not proceeding under the tax foreclosure process outlined in O.C.G.A. § 48–4–75, but as a purchaser at a tax sale.

This decision is consistent with the Court's decision in *In re Drummer,* 457 B.R. 912 (Bankr.N.D.Ga.2011), but addresses a different issue. In *Drummer,* the barment notice had not yet been sent as of the petition date and the court did not need to address the issues addressed by the Court herein. Moreover, the *Drummer* case involved a personal residence. Likewise, the facts of *In re Kraw-*

*czyk,* 201 B.R. 589 (Bankr.N.D.Ga.1996) are also different. In *Krawczyk,* the question was whether a foreclosure sale for purposes of 11 U.S.C. § 1322(c) had occurred after a tax sale under the Internal Revenue Code. *Krawczyk* did not consider tax sales under Georgia state law nor the effect of the property at issue being non-residential property. Finally, this case is different from the facts presented to the Eleventh Circuit in *Commercial Federal Mortgage Corp. v. Smith,* 85 F.3d 1555 (11th Cir.1996). First, the court in *Smith* considered Alabama law, not Georgia law. As the court described Alabama foreclosure law, once the foreclosure occurs, the mortgagee holds title and the debtor's equitable rights of redemption end. Further, the debtor was not in possession of the property as the statutory right to redeem under Alabama law required the debtor to vacate the premises. Next, the debtor in *Smith* sought to cure and reinstate the original mortgage which had been foreclosed as if a foreclosure had never occurred. The Debtor here does not dispute the tax sale or the result thereof, but only extends the time to pay the redemption price. Further, under Georgia law with respect to tax sales, the tax sale is not a foreclosure. Rather, it is a sale under a levy and execution. The foreclosure does not occur until the barment process as set out by Georgia statute has been completed. Here, by contrast to *Smith,* the foreclosure process had begun but had not been completed, much like a bankruptcy petition being filed immediately before a sale is cried out on the courthouse steps to foreclose a security deed. As such, the Court has found that the Debtor retained rights which were property of the estate and Scorpion holds a claim which is subject to being treated under a Chapter 13 plan.

### Conclusion

In summary, the Debtor's property of the estate includes her equitable interest in the Property, her right to redeem, her right to possession, and her right to use the Property. The Debtor certainly could have tendered the redemption price in a lump sum within 60 days of the expiration of the original redemption period, but she did not do so. Nevertheless, Scorpion holds a claim in the case, and the claim can be treated under Section 1322. Since the time period has expired under Section 108(b) for the Debtor to tender a lump sum payment of the redemption price, the only way the Debtor can now pay the redemption price is pursuant to a confirmed plan in Chapter 13. If the plan is not confirmed, there is no further right of the Debtor to redeem. If, after confirmation, the plan is dismissed before the redemption price is paid, there is no further right to redeem. This ruling is not an extension of the Debtor's non-bankruptcy rights under Section 108; it is permission for the Debtor to exercise her bankruptcy rights to pay a claim under Section 1322.

The Court will enter separate orders on each pending Motion.