
**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ERIN ANN SHARP,<br>　　　　　Debtor. | BAP Nos.　WW-24-1001-SGB<br>　　　　　　　　WW-24-1002-SGB<br><br>Bk. No. 3:23-bk-41097-BDL |
| VITRUVIAN DESIGN, LLC,<br>　　　　　Appellant,<br>v.<br>ERIN ANN SHARP; MICHAEL G.<br>MALAIER, Chapter 13 Trustee,<br>　　　　　Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Western District of Washington
Brian D. Lynch, Bankruptcy Judge, Presiding

## APPEARANCES

Rachel E. Khadivi of Illuminate Law Group argued for appellant Vitruvian

design, LLC; David Carl Hill of Richmond Hill, PLLC argued for appellee

Erin Ann Sharp.

Before: SPRAKER, GAN, and BRAND, Bankruptcy Judges.

SPRAKER, Bankruptcy Judge:

## INTRODUCTION

Lakeland Village Community Club ("Lakeland") commenced judicial

foreclosure against debtor Erin Ann Sharp's residence to collect unpaid assessments. The state court entered default judgment against Sharp. Appellant Vitruvian Design, LLC ("Vitruvian") thereafter purchased Sharp's residence at a prepetition Sheriff's sale, and Lakeland was paid in full. Sharp filed her chapter 13[1] bankruptcy well after the sale and days before her statutory right of redemption expired under Washington law. Sharp proposed several plans. Vitruvian objected to each and sought relief from stay to permit the execution, delivery, and recording of a Sheriff's deed. The bankruptcy court ultimately confirmed Sharp's third amended plan, which required her to pay Vitruvian shortly after confirmation all costs and expenses arising from its purchase of the property. The bankruptcy court also denied the motion for relief from stay. Vitruvian appealed both orders.

These appeals require us to examine a chapter 13 debtor's ability to save her residence by filing bankruptcy after a judicial foreclosure sale but before the statutory redemption period expires under state law. The bankruptcy court confirmed a plan that enabled Sharp to promptly pay Vitruvian a lump sum, in essence, to redeem the property. Unfortunately, there is no legal basis to support this type of plan treatment under the instant circumstances. As the bankruptcy court recognized, the statutory redemption period expired well before Sharp confirmed her plan. Sharp,

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

therefore, had no state law redemption rights to exercise by the time she confirmed her plan.

Nor did Sharp have any rights under the Bankruptcy Code that would permit her to save her residence. While chapter 13 generally permits debtors to cure home mortgage defaults over the term of their plans, § 1322(c)(1) terminates that right when the debtor's principal residence is sold at foreclosure. As a matter of federal law, the residence is sold and the right to cure terminates under § 1322(c)(1) when the "gavel falls" at the foreclosure sale. More importantly, by the time of Sharp's bankruptcy there was no remaining debt left for Sharp to cure. Lakeland's debt had been satisfied from the foreclosure sale proceeds. Vitruvian's purchase of the residence did not make it a creditor holding any sort of claim against Sharp.

We publish this decision to emphasize that a chapter 13 debtor has limited options to reclaim property when a judicial foreclosure of that property precedes her bankruptcy. Even when state law provides a statutory right of redemption, a subsequent bankruptcy filing may, at most, temporarily extend the state redemption period under § 108(b). In such situations, the debtor's remaining property interest under state law typically becomes part of the bankruptcy estate under § 541(a). The automatic stay generally protects that interest—at least until the expiration of the (extended) statutory redemption period. At that point, under Washington law, the debtor's lingering interest in the property would be

3

reduced to possession and bare legal title.

Unfortunately, Sharp's bankruptcy merely extended the time for her to redeem the foreclosed property under Washington law. Chapter 13 bankruptcy enables debtors to reorganize their debts by permitting them, under certain circumstances, to repay allowed claims. Here, the prepetition judicial foreclosure satisfied the only relevant debt and altered the ownership of the affected property. Chapter 13 simply does not permit debtors to alter the state law ownership rights in the foreclosed property. We understand that Sharp has lost her residence for what began as a relatively small, but secured, debt. Sadly, however, Sharp's ability to save her foreclosed residence ended upon the expiration of § 108(b)'s extension of the statutory redemption period. Accordingly, we REVERSE the order confirming Sharp's plan. As for the order denying relief from stay, we REVERSE and REMAND for entry of an order consistent with this decision granting Vitruvian relief from the stay.

## FACTS

Sharp owned a home in Mason County, Washington ("Property"). The Property was subject to homeowner's association fees assessed by Lakeland. In September 2019, Lakeland recorded a notice of assessment lien for unpaid homeowner's association fees of $713 as well as related filing and preparation fees of $250. The assessment lien also included unspecified additional related charges and expenses that might become due and remain unpaid in the future.

Roughly two years later, Lakeland commenced an action for judicial foreclosure against Sharp. Lakeland obtained a default judgment and decree of judicial foreclosure. The judgment awarded $1,688 in principal, $2,625 in attorney's fees, and $549.93 in costs, and accrued interest at a rate of 12% per annum. Pursuant to the judgment, the state court issued a writ of execution and order of sale. A Sheriff's sale was held on July 15, 2022, at which Vitruvian purchased the Property for $25,000. In its August 9, 2022 order confirming sale, the state court directed that $8,689.28 be paid to Lakeland to satisfy its judgment debt and the remaining sale proceeds ("Net Proceeds") be held by the court clerk pending further order of court. It is undisputed that Lakeland was paid prepetition—and its debt thereby satisfied—pursuant to this order.

Sharp filed her chapter 13 bankruptcy petition on July 10, 2023, just five days short of the expiration of the one-year statutory redemption period provided pursuant to Revised Code of Washington ("RCW") 6.23.020(1)(b). Her accompanying schedules stated that she "owned" the Property despite the Sheriff's sale to Vitruvian. The schedules listed both Lakeland and Vitruvian in the same entry as "secured creditors" though the debt to Lakeland already had been satisfied by the foreclosure sale.

Along with her petition and schedules, Sharp filed her initial chapter 13 plan. The initial plan did not mention Vitruvian at all. But it did classify Lakeland as a creditor holding a claim secured by the Property and proposed to make monthly plan payments to Lakeland of $1,143.65.

Vitruvian objected to the initial plan on the basis that Sharp had failed to redeem the Property in a timely manner.

Vitruvian also moved for relief from stay to permit the Sheriff to execute and deliver the Sheriff's deed conveying title of the Property to it and to obtain possession of the Property. Sharp opposed the relief from stay motion. She argued that under both Washington and federal law, she retained her rights and interest in the Property at the time of her bankruptcy filing. Sharp maintained that the Bankruptcy Code permitted her to "cure" the redemption "obligation" she owed to Vitruvian at any time before delivery of the Sheriff's deed.[2]

Sharp filed an amended chapter 13 plan in which she proposed to make a lump sum payment to Vitruvian of $38,158.61 within 30 days of plan confirmation, subject to Vitruvian filing a proof of secured claim and allowance of that claim. The amended plan no longer identified Lakeland as a creditor.

Vitruvian again opposed the amended plan, contending that the Sheriff's sale had terminated Sharp's right to "cure and maintain" the debt she had owed to Lakeland. Vitruvian acknowledged Sharp's former statutory redemption right under Washington law and that the time to

---

[2] Section 1322(b)(3) and (5) deal with the "cure" of existing defaults as part of a chapter 13 plan. In this context, "cure" generally consists of permitting debtors to repay amounts in arrears over the life of their chapter 13 plans in exchange for unwinding the consequences arising from the debtors' monetary defaults. *See Oregon v. Hurt (In re Hurt)*, 158 B.R. 154, 159-60 (9th Cir. BAP 1993).

exercise that right had not expired as of the petition date. But Vitruvian pointed out that the right of redemption had expired on the 60th day after she filed her petition pursuant to § 108(b). Vitruvian also advised the court that if Sharp could still redeem the Property, the amount necessary had increased to $50,150.43.

On November 8, 2023, the bankruptcy court held a hearing on Sharp's first amended plan and the relief from stay motion. The court denied confirmation of the plan and continued the relief from stay motion for further hearing. The court ruled that a "cure and maintain" plan was not an option for Sharp under § 1322(c)(1) because the foreclosure sale occurred prepetition. But it suggested that other potential plan treatments might be confirmable—subject to Vitruvian's consent.

Within a week, Sharp filed her second amended plan. This time, Sharp proposed to unconditionally pay Vitruvian $60,000 within ten days of plan confirmation—and to request that the state court release the roughly $15,000 in Net Proceeds to Vitruvian. The second amended plan did not identify this payoff as a redemption. Instead, the plan still identified Vitruvian as a secured creditor. Though the plan did not specifically say so, Sharp apparently contemplated that payment of the above-referenced amounts would function like a redemption. Upon full payment, Sharp evidently believed that whatever interest Vitruvian acquired in the Property through the Sheriff's sale would be extinguished and her full ownership in the Property restored.

Vitruvian again objected to the second amended plan largely on the basis that the time to redeem already had expired under both state law and § 108(b). It also argued that its rights and interest in the Property did not constitute a claim within the meaning of the Bankruptcy Code. Accordingly, it maintained that it was improper for Sharp to treat it like a creditor. Finally, Vitruvian observed that any treatment of its rights and interest in the Property could not be confirmed without its acceptance—which it was not giving.

At the hearing on Sharp's second amended plan, the bankruptcy court concluded that as of the bankruptcy filing Vitruvian's rights within the redemption process fell within the broad definition of a claim. The court then held that Sharp's immediate payment of all costs and expenses associated with Vitruvian's purchase of the Property was neither a "cure" under § 1322(b), nor redemption under RCW 6.23.010, et seq. Rather, it believed that full payment of Vitruvian's costs and expenses was a separate option—"some sort of payoff." The court read this Panel's decision in *Wilmington Savings Fund Society, FSB v. Fairbanks (In re Fairbanks)*, 2021 WL 3578937 (9th Cir. BAP Aug. 12, 2021), to suggest that an immediate payoff could be confirmed as part of a chapter 13 plan without the consent of the payee who purchased the property at a prepetition foreclosure sale.

The bankruptcy court entered an order on December 20, 2023, denying Vitruvian's relief from stay motion. It entered a separate order

8

confirming Sharp's third amended plan on December 28, 2023.[3] Vitruvian timely appealed both orders.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334. We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court err when it confirmed Sharp's third amended plan?

2. Did the bankruptcy court abuse its discretion when it denied Vitruvian's relief from stay motion?

## STANDARDS OF REVIEW

The issues arising from confirmation of Sharp's chapter 13 plan are purely legal in nature. We review such issues de novo. *See Meyer v. Lepe (In re Lepe)*, 470 B.R. 851, 855 (9th Cir. BAP 2012); *see also Smith v. Spurgeon (In re Smith)*, 207 B.R. 888, 889 (9th Cir. BAP 1996) ("Conclusions of law made in determining the confirmability of a Chapter 13 plan are reviewed de novo."). De novo review means we give no deference to the bankruptcy court's decision. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We review decisions to deny or grant relief from stay for an abuse of

---

[3] At the hearing on the second amended plan, the bankruptcy court conditionally approved Sharp's plan subject to Sharp filing a third amended plan to address some lingering issues that are not relevant to our analysis and resolution of this appeal.

discretion. *In re Fairbanks*, 2021 WL 3578937, at *2 (citing *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 351 (9th Cir. 1996)). The bankruptcy court abused its discretion if it applied an incorrect legal rule or its factual findings were illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

Lakeland conducted a judicial foreclosure though a Sheriff's sale under RCW § 6.21.090, et seq. to collect outstanding assessments Sharp owed. Vitruvian purchased the Property at the Sheriff's sale. It then tendered the purchase price to the Sheriff. Pursuant to RCW 6.21.100, the Sheriff delivered the sale proceeds to the clerk of court. The state court then entered its order confirming the foreclosure sale and directing payment be made from the sale proceeds to satisfy Lakeland's judgment. No party suggests that Lakeland was not paid. As a result of the judicial foreclosure sale, Sharp no longer owed any debt to Lakeland, and it was no longer her creditor when Sharp filed her chapter 13 petition.

Unlike nonjudicial foreclosures, Washington provides a statutory right of redemption following a judicial foreclosure and sale. *Compare* RCW § 6.21.080, *with* RCW § 61.24.050(1); *see also Fid. Mut. Sav. Bank v. Mark*, 767 P.2d 1382, 1384 (Wash. 1989) (en banc) (describing Washington's statutory right of redemption). Despite the sale of her Property, Sharp could redeem the Property by paying:

10

(1) the amount bid at the sheriff's sale with interest, (2) any assessment or taxes paid by the purchaser with interest, and (3) any sum paid by the purchaser on a prior lien or obligation secured by an interest in the property to the extent payment was necessary to protect the judgment debtor or a redemptioner.

*P.H.T.S., LLC v. Vantage Cap., LLC*, 345 P.3d 20, 23 (Wash. App. 2015) (citing RCW § 6.23.020(2)). The appliable redemption period under Washington law was one year from the date of the sale. RCW § 6.23.020(1)(b).

Sharp filed her bankruptcy shortly before the expiration of the state redemption period. Because her statutory right to redeem had not expired before she filed her bankruptcy, she retained legal tile to the Property subject to Vitruvian's interest. *Mark*, 767 P.2d at 1385. Thus, as of her bankruptcy filing, Sharp held both legal title and a "reversionary interest" in the Property arising from her statutory right to redeem. These interests became property of her bankruptcy estate under § 541(a). Furthermore, § 108(b) extended Sharp's unexpired redemption rights for an additional 60 days after entry of the order for relief. *In re Richter*, 525 B.R. 735, 749 (Bankr. C.D. Cal. 2015). At the same time, Vitruvian, as the Sheriff's sale purchaser, held an "inchoate" ownership interest in the Property as a form of "defeasible title" subject to redemption. *Mark*, 767 P.2d at 1384–85. As set forth in *Mark*, it is now settled under Washington law that "a sheriff's certificate of purchase does not pass title but is only evidence of an inchoate interest which may or may not ripen into title." *Id.* at 1385

11

(quoting *W.T. Watts, Inc. v. Sherrer*, 571 P.2d 203 (Wash. 1977) (en banc)).[4]

## I. APPEAL FROM CONFIRMATION ORDER.

### A. Sharp's right of redemption expired before confirmation of her chapter 13 plan.

Vitruvian first argues that the bankruptcy court erred by permitting Sharp to redeem her Property under her confirmed plan after the § 108(b) 60-day extension expired. Specifically, the 60th day after her petition was September 8, 2023. Vitruvian argues that the extension provided by § 108(b) expired well before confirmation of Sharp's plan. In its final ruling, the bankruptcy court agreed with Vitruvian and held that Sharp no longer could invoke § 108(b) to redeem the Property. We agree.

Having failed to exercise her statutory right of redemption by September 8, 2023, Sharp could not invoke either RCW § 6.23.010, et seq., or § 108(b) to redeem the Property from the foreclosure sale under Washington law. *Cf. In re York*, 2016 WL 6157432, at *3-4 (Bankr. E.D. Wash.

---

[4] Washington case law has not always been entirely uniform when discussing the nature of the property interests the judgment debtor and the purchaser each respectively hold in the subject property during the statutory redemption period. *Compare Sandberg v. Murphy*, 236 P. 106, 107-08 (Wash. 1925), *and McManus v. Morgan*, 80 P. 786, 787 (Wash. 1905), *with De Roberts v. Stiles*, 64 P. 795, 797 (Wash. 1901); *see also In re City of Seattle,* 138 P.2d 667, 668–69 (Wash. 1943) (identifying certificate of execution sale as passing inchoate interest in subject property pending redemption or expiration of redemption period, but concluding: "whatever the interest a purchaser acquires in the property purchased at an execution sale may be called, it is, at least, an interest for which value was given and of which he cannot be deprived without compensation."). Whatever the exact nature of parties' interests in the Property may be, they are sufficiently defined for our purposes in this appeal.

Oct. 21, 2016) (holding that debtor could not propose a plan purporting to redeem personal property held by a pawnbroker where he failed to do so within the time permitted by Washington statute or as extended under § 108(b)).

Sharp has not argued that her statutory redemption rights survived beyond September 8, 2023, or that she substantially complied with the statutory redemption requirements before they expired.[5] In short, it is beyond dispute that Sharp could not use her chapter 13 plan to invoke expired redemption rights as a means to reclaim her Property.

**B.     Sharp cannot invoke § 1322(b) to extinguish Vitruvian's rights in the Property.**

Though Sharp concedes that her statutory redemption rights expired before she was able to confirm her plan, she argues that § 1322(b) enables her to extinguish Vitruvian's rights in the Property and force it to relinquish its interest by paying Vitruvian under her plan. Sharp points out that the automatic stay prevented Vitruvian from compelling entry of the Sheriff's deed which would extinguish whatever remaining interest she held in the Property under state law. Because the stay preserved her

---

[5] *See generally Millay v. Cam*, 955 P.2d 791, 797-98 (Wash. 1998) (en banc); *Mark*, 767 P.2d at 1385–86; *see also PNC Bank, Nat'l Ass'n v. Reeves*, 2018 WL 5977921, at *2 (Wash. App. Nov. 14, 2018) ("Every party seeking to redeem foreclosed property from the sheriff's sale purchaser . . . must tender the redemption amount . . . to the sheriff within the applicable redemption period . . ., absent exceptions not relevant here."); *Millay*, 955 P.2d at 796 (holding that substantial compliance doctrine does not apply when the party seeking to redeem fails to timely tender the redemption amount).

13

remaining interest in the Property as of her filing date, she argues that she could still use chapter 13 to reclaim her full interest in the Property from Vitruvian. Vitruvian counters that, as a matter of law, Sharp's chapter 13 plan could not modify the rights it acquired from the Sheriff's sale. The bankruptcy court largely agreed with Vitruvian. We also agree. There are two distinct reasons why Sharp was barred from using § 1322(b) to deal with Vitruvian's rights. We discuss each of these, in turn, below.

### 1. Ownership versus debt.

With certain exceptions not relevant here, a chapter 13 debtor may confirm a plan to "cure" or "cure and maintain" **debts** on which the debtor has defaulted. § 1322(b)(3) and (5). But Vitruvian maintains that it holds no claim against Sharp, and she owes no debt to it. Rather, it states that it is the owner of the Property subject only to Sharp's expired statutory right of redemption. It argues that its ownership interest in the Property is not a debt that Sharp can reorganize under § 1322(b). *See In re Lockwood*, 2010 WL 1727447, at *3 (Bankr. E.D. Ark. Mar. 30, 2010) ("Section 1322 allows a debtor to keep collateral while altering the creditor's claim secured by that collateral—it does not allow a debtor to alter another party's ownership interest in property as the Debtor seeks to do here."); *see also In re Tate*, 2021 WL 4467604, at *3 (Bankr. W.D. Tex. Sept. 29, 2021) ("as of the petition date, W7 held 'good and perfect title' to the Property under Texas law . . . . W7 is the owner of the Property subject only to the Debtor's personal right of redemption under applicable state law. Therefore, the Debtor cannot

modify W7's rights in the chapter 13 plan because W7 is the owner of the Property, not a lien holder."); *Town of Beacon Falls v. Christiano (In re Christiano)*, 605 B.R. 1, 9 (Bankr. D. Conn. 2019) (holding that Connecticut tax sale purchaser was not a creditor whose rights could be modified in a chapter 13 plan); *cf. Justice v. Valley Nat'l Bank*, 849 F.2d 1078, 1083 (8th Cir. 1988) (noting that under both § 1222(b)(2) and § 1322(b)(2) a debtor cannot modify the rights of foreclosing secured creditors when the security interest ceases to exist upon foreclosure).

Some courts, however, have held that the amount needed to redeem a foreclosed property constitutes a "claim" under the Bankruptcy Code's broad definition of that term. *See, e.g., Encore Assets, LLC v. Woodley (In re Woodley)*, 579 B.R. 630, 637–38 (Bankr. N.D. Ga. 2017); *In re Gonzalez*, 550 B.R. 711, 726 (Bankr. E.D. Pa. 2016); *In re Kasco*, 378 B.R. 207, 209–11 (Bankr. N.D. Ill. 2007). The bankruptcy court in *Gonzalez* provided a thorough discussion of a similar situation arising from a chapter 13 case filed after a tax sale but before expiration of the applicable redemption period provided by Pennsylvania statute. *Gonzalez* held that the debtor could modify, cure, or pay off the tax sale purchaser's interest using the full array of plan provisions available under § 1322(b). 550 B.R. at 725-26. *Gonzalez* reasoned that the tax sale purchaser's interest and significant rights in the subject real property during the redemption period qualifies as a bankruptcy "claim" that is subject to modification and treatment in a chapter 13 plan under §§ 1322(b)(2) and 1325(a)(5). *Id*.

15

On the other hand, the bankruptcy court in *Richter*, 525 B.R. at 746-49, offered its own cogent analysis and concluded contrary to *Gonzalez* that a foreclosure sale purchaser during the statutory redemption period does not qualify as creditor for chapter 13 plan purposes. *Id. Richter* thus addressed the specific issue confronting us in the instant appeal: whether a third-party purchaser at a foreclosure sale—subject to a statutory right of redemption at the time of the bankruptcy filing—qualified as a creditor with a "claim" that could be modified, cured, or paid off under § 1322(b). The foreclosure in *Richter* was conducted as a nonjudicial foreclosure, which ordinarily does not provide a statutory right of redemption. But under California law, a "nonjudicial foreclosure by a homeowners' association on its lien for delinquent assessments is subject to statutory redemption, allowing the former owner to redeem within 90 days of the foreclosure sale." *Id*. at 741-42 (footnotes and citations omitted). As in the instant appeal, the debtor in *Richter* filed chapter 13 prior to expiration of the statutory redemption period. After analyzing the parties' respective rights under California foreclosure and redemption law, the bankruptcy court held that the third-party purchaser did not hold a claim against the debtor that could be addressed in bankruptcy. To reach this result, *Richter* principally focused on § 101(5)'s definition of a "claim" as a "right to payment." *Id*. at 746-49. *Richter* reasoned that the foreclosure sale purchaser had no right to any payment from the judgment debtor, so it did not qualify as a creditor and hence § 1322(b)'s cure and modification provisions

were inapplicable:

> While it is true that a debtor will lose his remaining interest in the property as a consequence of not redeeming, the threat of this loss alone is insufficient to establish the purchaser's "right to payment." The "right to payment" requires, in addition to enforceability, that there be an obligation. Yet, with statutory redemption, what the debtor has is not an obligation or duty to pay the redemption price to avoid losing ownership of the property but a voluntary right or opportunity to pay the redemption price in order to regain ownership.

*Id.* at 747 (footnote and citations omitted).

We agree with *Richter* and adopt its reasoning to dispose of the instant appeal. Ultimately, *Gonzalez* and similar cases focus on the debtors' potential loss of property to find that they are "in much the same position as the owner of property subject to a non-recourse lien." *Gonzalez*, 550 B.R. at 723 (quoting *Francis v. Scorpion Grp., LLC (In re Francis)*, 489 B.R. 262, 268 (Bankr. N.D. Ga. 2013)). While a debtor whose property has been foreclosed may be in a situation similar to one subject to a non-recourse lien, there is no underlying debt or claim. A claim is a right to a payment. § 101(5)(A).[6] And a creditor is simply one who holds a claim. § 101(10). Similarly, a debt means a liability on a claim. § 101(12). The proceeds from the judicial foreclosure sale satisfied Lakeland's judgment against Sharp. This extinguished Lakeland's claim and her debt. Vitruvian purchased the

---

[6] Under § 101(5)(B), a claim includes a right to an equitable remedy for breach of performance. Neither party has argued that Vitruvian has such a right.

Property subject to a right of redemption, giving it some form of an inchoate, defeasible ownership interest in the Property under Washington law. While Sharp could choose to redeem the Property within a period of time to defeat that ownership, Vitruvian had no **right** to any payment from Sharp. As *Richter* noted, the right of redemption did not impose any obligation on the debtor to pay the third party that purchased the foreclosed property. Therefore, there was no "debt," Vitruvian held no "claim," and it was not Sharp's "creditor."

Though the Bankruptcy Code's definition of a "claim" is exceedingly broad, we cannot conjure a "right to payment" where none exists.[7] Though redemption may resemble a non-recourse lien, it lacks the underlying right to payment necessary to establish the debtor's debt and the creditor's claim. Vitruvian held an inchoate and defeasible ownership interest in the Property; it did not hold a claim. Washington law supports this conclusion as it describes Sharp's statutory redemption as a "personal privilege" rather than a debt or any other type of obligation of the debtor that could give rise to a claim. *Mark*, 767 P.2d at 1384–85.

---

[7] Such a construction also ignores the underlying purpose of the post-foreclosure statutory right of redemption, which is to encourage bidders to bid fair amounts at judicial foreclosure sales. *See In re Hurt*, 158 B.R. at 158. Unlike the pre-foreclosure equity of redemption, statutory redemption rights are not intended as a means to give the debtor more time to either refinance or sell the property to prevent the negative consequences of a foreclosure. *See id.; see also In re Richter*, 525 B.R. at 741 (interpreting California law to the same effect); *Mark*, 767 P.2d at 1384 (comparing Washington's equity of redemption with its statutory right of redemption).

There being no "debt" or "claim," there was nothing Sharp could modify, cure, or pay off within the purview of § 1322(b) to reclaim the Property from Vitruvian in chapter 13. Rather, Sharp's only post-foreclosure right in the Property was her statutory right of redemption. It was only through Washington's redemption statute that she could compel Vitruvian to accept payment to retain the Property. And the statute required payment to be made within the statutory redemption period, as extended by § 108(b). Once the extended redemption period expired, Sharp lacked the means to compel Vitruvian to accept payment to reclaim the Property.

### 2. Section 1322(c)(1).

There is an additional problem with Sharp's attempt to invoke the cure provisions of § 1322(b)(3) or (5). As the bankruptcy court correctly recognized, under § 1322(c)(1), the Sheriff's sale in 2022 cut off any potential application of § 1322(b)(3) or (5). This is because § 1322(c)(1) provides: "a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) **until such residence is sold at a foreclosure sale** that is conducted in accordance with applicable nonbankruptcy law." (Emphasis added.)

In *In re Fairbanks*, 2021 WL 3578937, at *6, we recognized that under § 1322(c)(1), a debtor's right to propose "cure and maintenance" treatment of a secured creditor's claim in a chapter 13 plan ends when the subject real

19

property collateral is sold at a foreclosure sale. Courts have differed as to when a property is considered sold at foreclosure for purposes of § 1322(c)(1). *See* Keith M. Lundin, LUNDIN ON CHAPTER 13, § 82.1, at ¶¶ 18-27, https://www.lundinonchapter13.com/Content/Section/82.1 (last visited Jan. 22, 2025) (examining case law). As a matter of federal law, we held in *Fairbanks* that the residence was "sold at a foreclosure sale" within the meaning of § 1322(c)(1) when the auction concluded at the trustee's sale—when "the gavel fell." *See In re Fairbanks*, 2021 WL 3578937, at *6. This was so even though Fairbanks still retained some interest in the residence under state law when she filed bankruptcy. But § 1322(c)(1) limited what she could accomplish through her chapter 13 plan. More specifically, § 1322(c)(1) barred Fairbanks from confirming a plan proposing to apply § 1322(b)(3) or (5) to reclaim the property from the foreclosure sale purchaser. *Id.*

Even before 1994, when Congress enacted § 1322(c)(1)'s temporal restriction on the application of § 1322(b)(3) and (5), this Panel had adopted the "gavel rule" as a "uniform" rule to be applied in all chapter 13 cases involving a prepetition foreclosure sale. *See In re Hurt*, 158 B.R. at 160 ("the cutoff for cure should . . . be established at the foreclosure sale"); *see also Oregon v. Braker (In re Braker)*, 125 B.R. 798, 801 (9th Cir. BAP 1991) ("[a] pre-petition foreclosure sale prevents the application of section 1322(b)(5) to cure the antecedent default."). Under the gavel rule, the debtor lost any ability to invoke § 1322(b)(3) or (5) to cure any defaults and deaccelerate

20

the defaulted debts as soon as the gavel fell at the foreclosure sale, regardless of whatever post-foreclosure rights the debtor retained in the foreclosed property under state law. *See In re Hurt*, 158 B.R. at 159-60.[8]

Simply put, even if Sharp could use chapter 13 to address her redemption rights in a plan, § 1322(c)(1) cut off Sharp's right to use § 1322(b)(3) or (5) to cure any prepetition default.

### 3. *Frazer v. Drummond* **is consistent with our analysis.**

Sharp cites *Frazer v. Drummond (In re Frazer)*, 377 B.R. 621, 632 (9th Cir. BAP 2007), to support her argument that she can invoke § 1322(b) to reclaim the Property from Vitruvian. Specifically, she cites *Frazer* as authority for the proposition that her post-foreclosure interest in the Property became property of her bankruptcy estate, survived the expiration of the statutory redemption period as extended by § 108(b), and entitled her to use § 1322(b) to reclaim the Property. Sharp focuses on the statement in *Frazer* that "the more specific cure provisions of § 1322, which govern chapter 13 plans, apply rather than the more general provision of § 108(b), which applies in general to bankruptcy cases." *Id.*

---

[8] Principally based on what he perceives as murky and conflicting legislative history leading up to § 1322(c)(1)'s 1994 amendment, Judge Lundin posits that a foreclosure sale is not complete "in accordance with applicable nonbankruptcy law" under § 1322(c)(1) until any statutory right of redemption has expired. *See* LUNDIN ON CHAPTER 13, § 82.1, at ¶¶ 9, 14, 26-27. However, unlike Judge Lundin, we do not perceive a contextual reading of § 1322(c)(1) as ambiguous. Nor do we see anything in the amended statute that would justify a departure from our holdings in *Fairbanks*, *Hurt*, and *Braker*.

21

But *Frazer* does not help Sharp. The debtors in *Frazer* purchased real property under a contract for deed but defaulted. Under applicable Montana law, the seller on a contract for deed continues to hold legal tile as security for the unpaid purchase price while the buyer holds equitable title. *Hannah v. Martinson*, 758 P.2d 276, 278 (Mont. 1988). On default, the seller could provide notice and accelerate the outstanding balance owed. *See In re Frazer*, 377 B.R. at 624-25. If the buyer failed to pay the outstanding balance within the period allowed, the contract terminated, revesting full title in the seller. *See id.*

The Frazers filed their chapter 13 prior to the deadline to pay the accelerated balance owed. *Id.* at 625. The bankruptcy court denied confirmation of their plan proposing to pay in monthly installments the outstanding balance owed over the term of the plan. The court further granted relief from stay to the sellers, holding that the debtors' interests terminated postpetition upon the expiration of the debt payoff deadline as extended under § 108(b). *Id.* at 626.

We reversed. Importantly, the Panel distinguished contracts for deed from mortgages because only the latter is subject to the remedy of foreclosure. *Id.* at 629-30. Specifically, upon default on a contract for deed the seller does not invoke any judicial or statutory remedy such as foreclosure. *Id*. at 630. There being no foreclosure sale to enforce a contract for deed, § 1322(c)(1)'s temporal restriction does not apply. Therefore, "[u]nless some other provision of the Code trumps these chapter 13 plan

22

cure provisions, Debtors are entitled to cure the default within a reasonable time and reinstate the debt, despite the nonapplicability of § 1322(c)(1)." *Id.*

In *Frazer*, we premised our decision on the implicit fact that the sellers under the contract for deed continued to be creditors as of the petition date and that chapter 13 debtors routinely are entitled to cure and reinstate accelerated debts under their plans. *Id.* Given the inherent policy underlying chapter 13 favoring rehabilitation of defaulted debtors, *Frazer* held that the debtors' rights in chapter 13 were not limited to the extended time to repay the accelerated debt under the contract for deed and § 108(b). *Id*. at 631-32.

*Frazer* is consistent with our analysis. Unlike the sellers in *Frazer*, Lakeland sued for a judgment of judicial foreclosure to collect on its lien, thereby implicating Washington's judicial foreclosure scheme, including the statutory right of redemption. As we have explained above, § 1322(c)(1) precluded Sharp from curing any lingering "default" through her chapter 13 plan. More importantly, there was no surviving "debt" in default for Sharp to cure in her bankruptcy; Vitruvian held an ownership interest in the Property, not a "claim" against Sharp that was subject to her reorganization. Under these circumstances, Sharp's ability to redeem her foreclosed Property was limited to the specific terms and conditions of Washington's redemption statute, as extended by § 108(b).

C.     *Fairbanks* **does not support confirmation of Sharp's plan.**

The bankruptcy court recognized that neither §§ 1322(b)(3) or (5), nor

23

Sharp's expired state statutory right of redemption, permitted her to propose a plan to reclaim her residence. Nonetheless, it relied on our decision in *In re Fairbanks*, 2021 WL 3578937, to confirm Sharp's plan. It reasoned that neither § 1322(c)(1), nor the gavel rule adopted in *Hurt*, precluded every possibility that the debtor might be able to propose a confirmable plan.

In *Fairbanks*, the secured lender conducted a prepetition nonjudicial foreclosure sale that was not completed before the debtor filed bankruptcy. *Id.* at *1. On appeal, we affirmed the bankruptcy court's decision that the postpetition execution and delivery of a trustee's deed of sale to the purchaser violated the automatic stay. We also affirmed denial of the purchaser's motion to retroactively annul the stay to validate the execution and delivery of the deed. *Id.* However, we vacated the bankruptcy court's denial of prospective relief from the automatic stay because we were "concerned that the bankruptcy court collapsed the examination of cause for prospective relief from stay with its analysis of retroactive annulment." *Id.* at 8. We recognized that the debtor could not invoke the cure provisions of § 1322(b)(3) or (5) because the gavel had fallen at the prepetition nonjudicial foreclosure of the property. *Id.* at 6. We further acknowledged that this conclusion necessarily followed from our prior decision in *Hurt* and § 1322(c)(1)'s restriction on a chapter 13 debtor's ability to cure a home loan default. Nonetheless, we observed:

A cure and maintenance plan is only one way in which a

24

chapter 13 debtor can address a secured claim. Ms. Fairbanks might propose a plan that provides for her to pay off the secured claim by way of a new refinancing loan, that provides for a sale of the property, or that is based on another arrangement that Wilmington is willing to accept. We cannot say whether Ms. Fairbanks could obtain confirmation of such a plan; the bankruptcy court has not ruled on plan confirmation. For present purposes, it is enough to say that the impossibility of a "cure and maintenance" plan does not automatically require the bankruptcy court to grant stay relief.

*Id.*

Relying on this language from *Fairbanks*, the bankruptcy court here distinguished Sharp's chapter 13 right to pay off a debt through her plan from payments to cure a prepetition default. The court confirmed Sharp's plan based on its understanding that she was simply paying off the redemption amount in full. Indeed, § 1322(b)(8) permits a debtor to "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor."[9] Yet, this right presupposes that there is a "claim" to pay off. As discussed in detail above, Sharp's underlying debt to Lakeland was satisfied prepetition after entry of the state court's order confirming the Sheriff's sale. This order directed the

---

[9] As this case demonstrates, a debtor's rights in chapter 13 can become complicated and are nuanced, particularly where the debt at issue is secured by the debtor's residence. For example, though § 1322(b)(8) gives chapter 13 debtors the right to pay a claim in full over the course of a plan, such payments cannot modify the secured creditor's rights where that debt is secured by the debtor's primary residence. § 1322(b)(2). Additionally, any such plan must comply with the requirements of § 1325.

court clerk to pay Lakeland from the Sheriff's sale proceeds. *See generally* RCW §§ 6.21.110(1), 6.21.120 (indicating that—when the Sheriff's sale is subject to a statutory right of redemption—payment of the judgment creditor from the Sheriff's sale proceeds occurs before a Sheriff's deed is issued). The prepetition satisfaction of the debt Sharp owed to Lakeland materially distinguishes Sharp's case from *Fairbanks*; Sharp never owed any debt to Vitruvian, and it held no claim against her.

*Fairbanks* involved a nonjudicial foreclosure. Under Washington law, the underlying debt was not satisfied when the gavel fell but only upon the execution and delivery of the trustee's deed. *See* 18 WASHINGTON PRACTICE, REAL ESTATE §§ 20.14-20.16 (2d ed. 2024) (stating that "[t]he successful bidder, the purchaser, must 'forthwith' pay [to the trustee] the price bid. Thereupon, the trustee gives the purchaser his deed.") Accordingly, the lender in *Fairbanks* still held its right to payment and a "claim" against the debtor as of the bankruptcy filing. As recognized in *Frazer*, 377 B.R. at 630, where the debt has not been paid, a chapter 13 debtor may use chapter 13 to resolve that claim. Though § 1322(c)(1) prevented the debtor in *Fairbanks* from curing the prepetition default that prompted the nonjudicial foreclosure sale, that debt remained within the bankruptcy. The debtor could still pay the secured debt in full over the term of the plan, most likely by refinancing or selling the property, subject to the applicable provisions of the Bankruptcy Code.

In contrast to *Fairbanks*, there was no claim for Sharp to pay Vitruvian

(or Lakeland) in a chapter 13 plan. Therefore, it was error to confirm a chapter 13 plan to alter Vitruvian's ownership interest in the Property.

## II. APPEAL FROM ORDER DENYING RELIEF FROM STAY.

The record reflects that the bankruptcy court's denial of Vitruvian's relief from stay motion largely hinged on its confirmation of Sharp's third amended plan. Vitruvian sought relief from stay for cause under § 362(d)(1). In light of our analysis set forth above that there was, and is, no legitimate prospect of Sharp using chapter 13 to reclaim her Property, Vitruvian established cause for relief from stay under § 362(d)(1). When a debtor files bankruptcy post-foreclosure and thereafter retains only "possession and bare legal title" a third-party purchaser typically has cause to obtain relief from the stay to seek title and possession under state law procedures. *See, e.g.*, *In re Nelson*, 2017 WL 745595, at *3-4 (Bankr. W.D. Wash. Feb. 24, 2017).

Therefore, the bankruptcy court's order denying Vitruvian relief from stay is REVERSED. We also REMAND this matter with instructions for the bankruptcy court to enter an order addressing any specific terms regarding the manner and timing of the relief from stay as are appropriate under the circumstances.

## CONCLUSION

This case illustrates the extremely narrow relief available to a chapter 13 debtor who files bankruptcy to save their property after confirmation of a judicial foreclosure and payment of the underlying debt. Upon payment

27

of the debt, there is no claim to be addressed through the plan even if the debtor's right to redeem becomes property of the bankruptcy estate. At best, such debtors may extend the time to redeem their property for 60 days under § 108(b). However, if the party that purchased the property at the judicial foreclosure holds an ownership interest under state law, § 1322(b) does not permit alteration of that interest.

Unfortunately, it appears that Sharp will lose her residence because she failed to exercise her redemption rights timely. Accordingly, for the reasons set forth above, we REVERSE both the order confirming Sharp's plan and the order denying Vitruvian relief from the automatic stay. Additionally, we REMAND this matter for entry of a relief from stay order consistent with this decision.